### Norfolk

RONALD LEE SMITH, JR.

v.

COMMONWEALTH OF VIRGINIA

No. 1305-91-1

Decided June 22, 1993

COUNSEL

Charles E. Haden, for appellant.

Robert B. Condon, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BAKER, J.**—Ronald Lee Smith, Jr. (appellant) appeals from his bench trial conviction by the Circuit Court of the City of Hampton (trial court) for rape of a fourteen-year-old female (victim). The sole issue presented by this appeal is whether the trial court abused its discretion when it denied appellant's motion for a continuance made for the first time on the morning that the trial was scheduled to begin.

On January 9, 1991, appellant was arrested pursuant to a warrant that charged he raped the victim. On January 10, 1991, counsel was appointed to represent appellant. She remained his counsel throughout the entire proceedings, including his conviction in the trial court from which this appeal emanates, and preparation of the petition and brief submitted to this Court.

To enable appellant to undergo psychiatric evaluation, on appellant's motion, a preliminary hearing scheduled for January 30, 1991 was continued. On March 7, 1991, appellant waived preliminary hearing. The case was certified to the trial court where, on April 1, 1991, appellant was indicted by a grand jury for rape in violation of Code § 18.2-61. By agreement with appellant's counsel, trial on the indictment was scheduled for May 1, 1991.

On April 5, 1991, counsel for appellant filed a motion in the trial court asking that any and all statements made by appellant be suppressed. Appellant asserted violation of his Fourth, Fifth and Sixth Amendment rights "in that Defendant's statements were not voluntary as they were induced by factual misrepresentations by Police Officers, without advice of counsel; and, while Defendant was being held under circumstances designed to wear down his free will." On May 1, 1991, by agreement, the trial date was continued. On May 2, 1991, evidence and argument were heard on appellant's motion to suppress. The motion was denied. By further agreement, the trial was rescheduled for May 30, 1991.

On the morning of May 30, 1991, prior to trial, counsel for appellant filed a "Motion For Discovery," asking the trial court to order the Commonwealth "to permit the Defendant to inspect and copy or photograph any written report of DNA paternity test, blood and breath

test, or other scientific reports and written reports . . . that are known by the Attorney for the Commonwealth to be within the possession, custody or control of the Commonwealth.'' When it was shown that the Commonwealth was not in possession of any of the documents requested, counsel for appellant made the following motion:

> I move to continue this case on the fact that the DNA test which my client voluntarily submitted to back in January, the test results haven't been returned yet. The test results are material to my defense. My client feels that it's exculpatory evidence, and I requested test results for that.

In response to the motion to continue, the trial court inquired of the prosecutor as to the status of the test results. The prosecutor said that she had called the lab and the lab would not start making the test for six to eight months from May 30, 1991. She further stated that once started, the testing process takes ten weeks and added that we are ''looking at almost a year.'' The trial court then asked counsel for appellant, ''what will the test show?'' Appellant responded as follows:

> Uh . . . the victim alleged that she's only had sex that one time. The pregnancy was the result . . . of the rape. My client denies such charge.

Thereafter, the trial court found that it would be unreasonable, on the facts presented, to grant the motion to continue the matter when it appeared that the results would not be available for ''possibly a year,'' and said:

> THE COURT:   We'll let the record reflect that on this day [trial date] Ms. Pak [defense counsel] filed a motion with the Court asking that any, to allow her to inspect, copy or photograph any written report of DNA test of blood, and breath tests, or other scientific reports, written reports of a physical and mental examination of the defendant or the alleged victim made in connection with the case.

> And, as I understand from the Commonwealth there is no DNA test results to be had.

> MS. KRINICK:   That's correct. Your honor. She [Ms. Pak] has seen my entire file, but that testing has not been done, and, therefore I'm not in possession . . .

THE COURT: It is my understanding the test has not been done and will not be done for maybe six months. The results will not be available for possibly a year.

MS. KRINICK: That's correct, your honor.

Counsel for appellant agreed with the trial court's observation that the DNA test would not prove that appellant was innocent of the rape charge but asserted that the result might contradict the victim's testimony that she had not had intercourse with anyone other than appellant at the time the rape is alleged to have occurred. Counsel further argued that the results might be exculpatory evidence.

When the trial judge denied the motion to continue, he stated that he would not be concerned with the issue of who fathered the baby, but, rather, would be concerned only with the issue whether the victim had been raped by appellant. The judge then said that it would be unreasonable to delay the trial for ''possibly a year.''

The record supports the trial court's decision. Upon familiar principles, we consider the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

The victim is fourteen years old. At the time of the offense, she lived with her mother, brothers and sisters. Appellant, a friend of the victim's mother, shared her mother's bedroom. When the victim was raped, she and appellant and possibly one brother were alone in the house. The victim had taken a bath and, clothed only in her ''bra,'' was drying off when appellant entered her room. She told him to leave. Instead of leaving, appellant pushed her down on the bed and forcibly penetrated her vagina with his penis. While appellant was on top of the victim, she was hitting him and yelling for him to get off of her. The victim testified that she became pregnant as a result of the rape. On January 16, 1991, the fetus was aborted.

On January 9, 1991, Detective Edgar A. Browning, a Hampton Police Investigator, was assigned to investigate the victim's complaint. As a result of information he received from the victim, he caused a warrant of arrest to be issued for appellant. After arresting appellant, but before interviewing him, Browning read appellant his *Miranda* rights. Appellant gave Browning two written statements in which he admitted to having sex with the victim. In the first, he related how the

victim had come to him, disrobed and, in effect, seduced him. When Browning told appellant that he could not believe the girl he had met could have acted in the manner appellant's first written statement suggested, appellant provided Browning with a second handwritten statement. In the second statement, appellant described the sexual events, except for the force, very nearly as the victim had related them. He concluded the handwritten admission by writing: ''The baby is mine.''

When the Commonwealth rested its case, appellant made no further motion at that time. Appellant called the victim's mother to testify on his behalf. She stated that appellant was her boyfriend and that she did not become aware of the victim's complaint until early January 1991. The mother admitted that she was pregnant by appellant at the time appellant had sex with the victim.

Appellant testified that the victim's brother, Larry, was at home the day appellant had sex with the victim. Appellant called Larry as a witness and Larry denied being at home on that date. Appellant disavowed his written admissions and denied having had sexual intercourse with the victim. He asserted that he had only written in the second statement the things Browning told him the victim had alleged. He said that he had described the events only as Browning had told him. He testified that the reason he made those statements was that the giving of the statement made it possible for him to be bonded out of jail pending his trial. On cross-examination, appellant admitted that Browning told him that he did not believe his first statement and asked him to write one that was true.

The defense rested without further motion and only argued that appellant's testimony was more credible than that presented by the Commonwealth. When finding appellant guilty, the trial court repeated that the issue was whether appellant had raped the victim, not to whom the baby belonged. On the facts presented by this record, we find that appellant's motion for a continuance was not timely made and that the record fails to show that he was diligent in his efforts to obtain the evidence upon which his motion was based.

■ ''A motion for a continuance . . . is addressed to the sound discretion of the trial court whose decision will not be reversed unless the record affirmatively shows an abuse of such discretion.'' *Shifflett v. Commonwealth*, 218 Va. 25, 30, 235 S.E.2d 316, 319 (1977) (citations omitted). While justice, not speed, should be paramount in determining whether a continuance will be granted, the court is not obligated to

grant a continuance based on mere speculation. *Gilchrist v. Commonwealth*, 227 Va. 540, 546, 317 S.E.2d 784, 787 (1984). In *Stewart v. Commonwealth*, 10 Va. App. 563, 394 S.E.2d 509 (1990), Stewart's motion for a continuance was denied because he could not tell the trial court that the unavailable witness would present evidence favorable to Stewart.

> Stewart asserts that he was prejudiced because the trial court's ruling prevented him from interviewing a potentially valuable witness who might have been able to discredit Torres' identification of him. However, the court was not obligated to grant his request for a continuance based on mere speculation. Stewart does not allege that there was an intentional discovery violation by the Commonwealth, nor does the record indicate that any discovery violation occurred. There is also nothing in the record to indicate that he was deprived of favorable or exculpatory evidence. We therefore find that he was not prejudiced by the court's ruling.

*Id.* at 569, 394 S.E.2d at 513. At trial, appellant disavowed his own handwritten admission that the child was his and asserted that he needed the DNA test results to prove the victim was impregnated by another. When asked by the trial court, "What will the test show?" he failed to proffer any probative information.

The burden is with appellant to submit to the appellate court a record that enables the court to determine whether there has been an abuse of trial court discretion.

> We have many times pointed out that on appeal the judgment of the lower court is presumed to be correct and the burden is on the appellant to present to us a sufficient record from which we can determine whether the lower court has erred in the respect complained of. If the appellant fails to do this, the judgment will be affirmed.

*Justis v. Young*, 202 Va. 631, 632, 119 S.E.2d 255, 256-57 (1961) (citations omitted).

■ An appellate court must dispose of the case upon the record and cannot base its decision upon appellant's petition or brief, or statements of counsel in open court. We may act only upon facts contained in the record. *Riddick v. Commonwealth*, 135 Va. 724, 726, 115 S.E. 523, 524 (1923).

Appellant's contention that the trial court abused its discretion by denying the continuance is not supported by this record. In determining whether the trial court properly exercised its discretionary powers, we look to the diligence exercised by the moving party to gather and make the evidence available at trial. *See Shifflett*, 218 Va. at 30, 235 S.E.2d at 319. Until the morning of the trial, five months after submitting blood to be tested, appellant had made no effort to have the results determined and available at trial. Making that motion on the morning of the trial at that time under the facts contained in or missing from this record was neither timely nor the result of unsuccessful, diligent efforts.

The record shows that appellant submitted to a DNA test in January 1991. We do not know whether specimens were taken from the victim and the fetus, nor do we know when his specimen was sent to a laboratory for testing. The record shows that a laboratory was expected to make the test but it does not identify the laboratory or show whether the lab was controlled by the State or a private company. The record establishes that appellant indicated that he would take a "blood test" but it does not show who requested the test.[1] In January 1991, at least a first step had been taken toward receiving DNA results, yet appellant did nothing to obtain the results until five months later on the morning of the trial.

We know that a DNA issue was raised on the morning of the trial. We do not know what effort, if any, appellant made to learn the results before the morning of the trial. We know that appellant wrote a confession in which he admitted that he had sexual intercourse with the victim and caused her to become pregnant. We do not know why he did not tell the trial judge on May 2, 1991, at the suppression hearing, that he needed the DNA test results at trial when he agreed to May 30, 1991 as a suitable date for his trial. We know that, in advance of the trial, counsel for appellant had seen the entire file of the prosecutor and that it did not contain any reference to DNA or any other chemical test results. Yet, on the morning of the trial, counsel filed a written request for evidence counsel knew was not in the prosecutor's possession. We know that, in support of his motion for a continuance, appellant alleged the test results "are material to my defense." We do not

---

[1] In her motion to continue, counsel for appellant said, "My client feels that it is exculpatory, and I requested test results for that." This statement may be read to establish who requested the test but we cannot conclude that as a certainty.

know whether the test could be completed with the specimen the laboratory had in its possession or whether the results would be favorable to the Commonwealth or appellant. We know that, at the time the motion was made to acquire evidence of the test results, that evidence would be, at best, only "potentially valuable" with the hope that it "might have been [used] to discredit" the victim's testimony as to whether she had sexual intercourse with a person other than appellant. When the trial court asked counsel for appellant, "What will the test show?" no probative response was given. The trial court could only speculate as to the potential value of the unavailable test results and guess whether it "might" be of assistance "if" it could be produced.

In any case, on this record, we are not required to hold that the trial court abused its discretion in denying appellant's motion for a continuance. *See Stewart*, 10 Va. App at 569, 394 S.E.2d at 513. We conclude that the trial court did not abuse its discretion when it denied appellant's motion to continue the trial of his case.

Accordingly, the judgment of the trial court is affirmed.

*Affirmed.*

Koontz, J.,* and Willis, J., concurred.

---

* When the case was argued, Judge Koontz presided. Judge Moon was elected Chief Judge effective May 1, 1993.