COURT OF APPEALS OF VIRGINIA


Present:   Judge McClanahan, Senior Judges Coleman and Annunziata


CHRIS CONNORS OVERCASH

                                                    MEMORANDUM OPINION[*]
v.       Record No. 1595-04-4                            PER CURIAM
                                                    FEBRUARY 1, 2005
ELIZABETH C. ALBERTELLA, F/K/A
  ELIZABETH C. OVERCASH


             FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                        Herman A. Whisenant, Jr., Judge

             (Chris Connors Overcash, *pro se*, on briefs).

             (Kirk A. Wilder, on brief), for appellee.


        On appeal, Chris Connors Overcash (father) contends:  (1) the trial court erred in finding a

material change in circumstances; (2) the trial court prejudged the case; (3) the trial court erred in

"hearing the case after the parties came to an agreement on the issues that [mother's] Motion stated

were a reason to change visitation"; (4) there was no "evidence that a change of visitation would be

in the best interest of the minor child"; (5) the trial court failed to consider all ten factors in Code

§ 20-124.3; and (6) the trial court erred in awarding the child's mother attorney's fees for contesting

an untimely notice of deposition and filing a motion for protective order.[1]  Upon reviewing the

record and briefs of the parties, we conclude that this appeal is without merit.  Accordingly, we

summarily affirm the decision of the trial court.  See Rule 5A:27.

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] In his opening brief, father lists five assignments of error and presents six questions.
We will address the six questions presented because they were the issues father addressed in the
argument section of his brief.

BACKGROUND

Father and Elizabeth C. Albertella (mother) were divorced by final decree entered on March 27, 2001. The parties had joint legal custody of their minor child, W.O., and mother was awarded primary physical custody. The decree contained detailed schedules and procedures for visitation on weekends, holidays, special occasions and summer. For weekends, father was given visitation with the child on the first, third and fourth weekends of each month.

In March 2002, father filed a motion to modify the decree. He contended "a material change in circumstances ha[d] occurred" since "the entry of the decree," and asked the trial court to award him "primary custody." By order dated August 30, 2002, the trial court found there was a material change in circumstances. However, it found the evidence "lacking to make a change in primary physical custody." Under the new order, the "parties [were to] continue to have joint legal custody with primary physical custody remaining with the mother." The trial court decreed that "commencing August 1, 2002, [father] be, and he hereby is awarded visitation with the minor child during every weekend of each month, from 4:00 PM Friday through Sunday at 6:00 PM, except the fifth weekend of the month." The order included a detailed schedule of holiday and special occasion visitation, as well as procedures the parents were to follow in implementing visitation.

On October 24, 2003, mother filed a motion to modify the final decree as to visitation. She indicated that circumstances have changed in that the visitation schedule precludes W.O. from participating in local sports and activities on the weekends. Mother also sought to modify the visitation order to prevent father from having W.O. miss school when visiting father on school days.

On May 4, 2004, the trial court conducted an evidentiary hearing on mother's motion. At the evidentiary hearing, mother testified that W.O. had friends at school and in the community

with whom he participated in extracurricular activities. However, because of the weekend visitation schedule, W.O. had been unable to participate in weekend activities such as attending friends' birthday parties and playing sports. Mother also proved that father works every Saturday during which time "the minor child would sometimes stay a[t] home with his [paternal] grandmother." Mother testified that the present visitation schedule allowed her only four weekends a year with W.O.

After hearing evidence, the trial court found a material change of circumstances and ruled that mother would have the minor child on the second weekend of each month. In so ruling, the trial court "explicitly stated each and every reason for its ruling under Virginia Code [§] 120-124.3 and went over each and every factor the Court is required to consider in making its ruling."

In its order, the trial court explained that it "carefully considered all the factors" contained in Code § 20-124.3 and "determined it would be in the best interests of the minor child" to modify visitation. It further found "there is a material change of circumstances," and that change "dictates that there should be a change in the visitation arrangements." Therefore, the court ordered that mother be awarded visitation with the child every second weekend. The order included other changes to visitation and procedures to which the parties agreed. Father signed the order "Objected to as not effective until written order is entered."

On June 4, 2004, mother appeared before the trial court and requested entry of the modified visitation order reflecting the rulings made on May 4, 2004. Mother also moved for a protective order to prohibit father from deposing Dr. Peter Robbins and for attorney's fees in contesting the improper deposition. The trial court found that, even though father "may have withdrawn" his notice of deposition "the same day" that mother's attorney filed a motion for a protective order, mother's attorney "had to take appropriate action." Thus, it granted the

protective order and awarded mother attorney's fees in the amount of $350. Father asked the

trial court to reconsider its earlier ruling, and the trial court refused to do so. On the final order,

entered on July 19, 2004, father listed the following four objections:

> (1) The Defendant, Pro se, cancelled the deposition and attempted to phone Mr. Wilder prior to his filing of his motion for Protective Order and fees. Mr. Wilder did not return the call. The Court ignored the evidence of this.

> (2) There was no evidence of malice on behalf of the defendant, Pro se. On the contrary, defendant, pro se, acted to notify Mr. Wilder there would not be a deposition. But the defendant's calls were not returned. Defendant, pro se, was set up. Counsel was not entitled to fees.

> (3) Court refused to hear defendant's Motion to Reconsider even though there was evidence that supported the motion.

> (4) The Court's rulings were not based on evidence.

DISCUSSION

1. Material Change in Circumstances

A party seeking to modify a visitation consent order bears "'the burden of proving, by a

preponderance of the evidence, a material change in circumstances justifying a modification of

the decree.'" Ohlen v. Shively, 16 Va. App. 419, 423, 430 S.E.2d 559, 561 (1993) (citation

omitted). The trial court's determination of whether a change of circumstances exists is a factual

finding and that finding and its evaluation of the best interests of the child will not be disturbed

on appeal if the court's findings are supported by credible evidence. See Visikides v. Derr, 3

Va. App. 69, 70, 348 S.E.2d 40, 41 (1986).

Mother presented evidence that father had obtained a new job since the last evidentiary

hearing which required him to work every Saturday, that W.O. had "established a wonderful

relationship with friends that live[] in his community," that he has become involved with peers in

social and athletic activities, and that visitation with the father for the first four weekends of each

month precluded W.O.'s participation in those activities with his peers. Mother also presented evidence that father "did not desire [W.O.] to participate in [local] extracurricular activities," although he was amendable to W.O. participating in the town where father lives. Finally, evidence showed that W.O. either spent Saturdays with father at father's place of work or with his paternal grandmother, indoors.

After considering the evidence presented at the May 4, 2004 hearing, the trial court found "there is a material change of circumstances." In its order, it indicated that it "carefully considered all the factors" in Code § 20-124.3, after which it "determined that it would be in the best interests of [W.O.] that the visitation between said child and the parties is modified."

The trial court sustained mother's objections to father's proposed Statement of Facts, thereby agreeing that father's presentation of the facts from the May 4, 2004 hearing was inaccurate, incomplete and/or incorrect. Credible evidence supports the conclusion of the court that there had been a material change in circumstances and that the modified visitation schedule was based upon W.O.'s best interests.

### 2. The Trial Court Prejudged the Case

Father contends he preserved this issue in argument at the June 4, 2004 hearing at which he moved the trial court to reconsider its earlier rulings. In his proposed Statement of Facts, father indicated that his attorney objected to an evidentiary ruling by the trial court "and if the Judge would not allow the evidence in the file then [he] needed more time to bring new evidence and that he felt the Judge had prejudged the case." Father concluded by noting that the trial court "found him in contempt without ever ruling on the objection."

In his brief, father contends:

> The [trial] Court abused its discretion by Pre Judging the case. At
> the opening of the trial the Judge stated that he had read the
> pleading and correspondence and seemed angry especially at the
> Defendant. During trial and when making his ruling Judge

Whisenhut said, "the circumstances that existed when the prior Order of August 2002 was entered were not relevant."

Father indicates in his brief that the trial court

committed prejudicial error by refusing to listen to testimony which related to the circumstances existing in August 2002, including the DE BENE ESSE Deposition of Dr. Peter Robbins, which we wanted to allude to but were denied which indicated that the Father should have as close to equal time with the child as practical and thus was a basis for the ruling on August 30, 2002 that Mr. Overcash should have four weekends out of each month and the Mother should only have the fifth weekend.

In his brief, father alleges that, "at the beginning of the trial," the trial judge "wanted the parties to go in the hall and come to an agreement, 'because Mr. Overcash you will not like what I am going to do.'" Father concludes by arguing, "[h]aving shown his proposed decision when we went into the hall we had no bargaining leverage because the opposing side was then inclined not to settle."

Mother asserted in her objections to appellant's Statement of Facts that the trial court did not single out father or advise him that he would not like the court's decision. Rather, the trial court asked the parties to try to reach an agreement "because both sides had the potential of disagreeing with the court's ruling once it heard the evidence."

Because the trial court sustained mother's objections to the statement of facts, we reject father's version. Moreover, absent the May 4, 2004 transcript, we are unable to determine what took place at that hearing. The appellant has the responsibility to provide this Court a record of the proceedings on appeal sufficient to facilitate appellate review. See Smith v. Commonwealth, 16 Va. App. 630, 635, 432 S.E.2d 2, 6 (1993). Thus, on the record before us, we are unable to find evidence that the trial court prejudged the case.

3. Trial Court Erroneously Heard Case After Parties Came to Agreement on Issues

Father argues in his brief that "[t]he parties had come to an agreement concerning the issues in the [mother's] Motion [to Modify the Decree] that were a reason for a change in circumstances and a reason to change visitation." However, mother alleged in her objections to appellant's Statement of Facts that "the parties never reached a complete agreement on the visitation arrangements" and that father's "assertions [we]re incorrect and incomplete."

Because the trial court sustained mother's objections to father's Statement of Facts, no evidence exists on the record before us that the parties came to an agreement on the contested issues. Therefore, the trial court did not err in ruling on the mother's motion to modify visitation as to the weekends.

4. No Evidence that Change of Visitation Would Be in Child's Best Interest

Father contends "[t]here was no evidence provided that showed that a change would benefit the child."

A trial court's evaluation of the best interests of the child will not be disturbed on appeal if the court's findings are supported by credible evidence. See Visikides, 3 Va. App. at 70, 348 S.E.2d at 41. The evidence showed that as W.O. got older, he became more involved with his peers and participated more in social and extracurricular activities in the community. Evidence also showed that father worked every Saturday, that father either took W.O. to work with him or placed him with his paternal grandmother, who did not take W.O. outside, and that father did not want or encourage W.O. to participate in activities in W.O.'s community. Credible evidence supported the trial court's determination that the modification was in W.O.'s best interests.

5. Trial Court Failed to Consider Factors in Code Section 20-124.3

Although father indicated in his proposed Statement of Facts that the trial "[j]udge did not address all 10 points required in 20-124.3 in making his decision," mother claimed in her

objections that father's statement was "incorrect." In fact, mother asserted "that the [trial] Court explicitly stated each and every reason for its ruling under Virginia Code [§] 120-124.3 and went over each and every factor the Court is required to consider in making its ruling and expressly stated such in its ruling."

Because the trial court sustained mother's objections to father's Statement of Facts and accepted mother's recitation of the facts, the evidence did not show that the trial court failed to consider the relevant factors.

Moreover, the trial court explained in its order that it "considered all the factors contained in § 20-124.3 of the Code of Virginia, and after considering all such factors, determined that it would be in the best interests of the minor child . . . that the visitation . . . [be] modified." A trial court "'speaks through its orders and those orders are presumed to accurately reflect what transpired'" at trial. Rose v. Commonwealth, 37 Va. App. 728, 734, 561 S.E.2d 46, 49 (2002) (quoting McBride v. Commonwealth, 24 Va. App. 30, 35, 480 S.E.2d 126, 128 (1997)). Based on the evidence presented and the recitation in the trial court's order, we cannot say the trial court erred.

### 6. Award of Attorney's Fees

At the May 4, 2004 hearing, the trial court overruled appellant's request to admit deposition testimony of Dr. Robbins taken in anticipation of the 2002 modification hearing. Father did not obtain current depositions from Dr. Robbins or have him attend the May 4, 2004 hearing as a witness. On May 21, 2004, two weeks after the May 4, 2004 *ore tenus* hearing, father filed a notice of deposition, indicating he intended to take Dr. Robbins' deposition testimony on May 27, 2004. He did not seek leave of court to do so.

On May 26, 2004, mother filed an objection to father's motion to reconsider, arguing, *inter alia*, that father should not be permitted to introduce evidence from Dr. Robbins

"subsequent to the evidentiary hearing." On May 26, 2004, mother also moved for a protective order to disallow the deposition noticed by father. Father filed a notice on May 26, 2004, advising mother that the deposition scheduled for May 27, 2004, "is hereby cancelled."

Mother moved the trial court at the June 4, 2004 hearing, "for a protective order to disallow the deposition of Dr. Peter Robbins." Mother's attorney argued that, even though father cancelled the notice one day before the scheduled deposition date, mother had to prepare a document responding to and opposing the untimely notice of deposition. Thus, she "had to incur attorney's fees" which she requested the trial court award her. Mother's attorney presented an affidavit of fees and costs associated with preparing the protective order. Her attorney advised that his fee for contesting the notice and preparing the protective order was $367.50 and that he anticipated charging another $390 in fees arguing the issue before the trial court. The trial court awarded mother $350.

"Whether to award attorney's fees 'is a matter submitted to the sound discretion of the trial court and is reviewable on appeal only for an abuse of discretion.'" Kane v. Szymczak, 41 Va. App. 365, 375, 585 S.E.2d 349, 354 (2002) (citation omitted).

Rule 4:2(b) requires a party to seek leave of court to take depositions after a judgment has been rendered. Father did not abide by Rule 4:2(b) and obtain leave of court to take the deposition. Moreover, father's failure to do so necessitated mother having to file objections to the notice and deposition, thereby incurring attorney's fees and costs. Based on the facts and circumstances, the trial court did not abuse its discretion in awarding mother $350 for attorney's fees.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.