COURT OF APPEALS OF VIRGINIA

Present:   Judges Alston, O'Brien and AtLee
Argued at Fredericksburg, Virginia


DION MICAH BLACKWELL

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1986-17-4          JUDGE RICHARD Y. ATLEE, JR.
                                                    NOVEMBER 20, 2018
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF WARREN COUNTY
Ronald L. Napier, Judge

D. Eric Wiseley (Struckmann, White & Wiseley PC, on briefs),
for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Appellant Dion Micah Blackwell pled guilty to possession of heroin with intent to

distribute. A judge of the Circuit Court of Warren County ("trial court") accepted his plea and

sentenced him to five years in prison with six months suspended. On appeal, Blackwell argues

the following:

1. The trial court erred when it admitted evidence in sentencing of
   prior charges in Maryland for which appellant had not been
   convicted.

2. The trial court erred when it departed upward from the guidelines
   and refused to suspend any period of incarceration beyond that
   which is required by statute because the Appellant is from
   Baltimore.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

3. The trial court erred when it refused to admit Appellant to probation, CCAP,[1] or other alternative punishment because he is from Maryland.

We disagree and affirm.

## I. BACKGROUND

Blackwell arranged to bring six grams of heroin from Baltimore, Maryland to Front Royal, Virginia. He made these arrangements with a "friend," who unbeknownst to Blackwell was acting as a confidential informant for the police. Law enforcement officers arrested Blackwell and recovered the heroin from his person. He pled guilty, the trial court accepted his plea, and ordered the preparation of a pre-sentence report ("PSR").

Blackwell had no prior convictions, but his PSR detailed seven prior or existing charges in Baltimore, Maryland. Three of those charges had been *nolle prosequied*. The remaining four charges were on the "Stet Docket."[2] No one at the sentencing hearing, including the trial court judge, was certain as to what the Stet Docket was or could provide a definitive explanation. The probation officer testified that her understanding was that it was "where cases go to die." Blackwell's counsel agreed with the probation officer's characterization, and further said that he believed Stet Docket cases were ones in which no disposition was made, as there was "not a good charge" or the prosecution was not interested in pursuing the matter. Blackwell objected to the evidence about the charges on the Stet Docket because it did not show that he had been convicted of those charges; however, there was no indication that they had been dismissed or *nolle prosequied*.

---

[1] "CCAP," as used throughout this memorandum opinion, refers to the "Community Corrections Alternative Program," administered through the Virginia Department of Corrections.

[2] The record refers to the "STE" docket, yet the parties agree that this is a typographical error.

Blackwell's PSR stated that he was approved to participate in the CCAP, and he was specifically recommended to participate in the Substance Abuse Program and Anger Management. It also noted that, because he resides in Maryland, any supervised probation after incarceration would require an Interstate Compact.

At the sentencing hearing, an investigator from the Warren County Sheriff's Office, assigned to the Northwest Virginia Regional Drug Task Force, testified. He stated that cases of heroin overdose in the county had doubled in the past year and that "ninety percent" of the heroin in the area came from Baltimore.[3]

The sentencing guidelines ranged from seven months of incarceration to one year, four months, with a midpoint of one year. The Commonwealth asked the court to impose a five-year sentence with no probation, in part because Blackwell could return to Baltimore if he were placed on probation and that his prior criminal history showed that Maryland did not take drug cases seriously. The Commonwealth argued that they should "send a message" that it is "unprofitable . . . to bring their drugs into our community to sell."

After hearing Blackwell's allocution and counsel's arguments, the trial court sentenced Blackwell to five years in prison. At a later hearing, it suspended six months of that sentence. In its final disposition, the trial court noted that the "heroin epidemic" was the rationale for departing from the guidelines.

## II. ANALYSIS

"We review the trial court's sentence for abuse of discretion. Given this deferential standard of review, we will not interfere with the sentence so long as it 'was within the range set by the legislature' for the particular crime of which the defendant was convicted." Scott v.

---

[3] No one objected to this statement before the trial court. As such, reviewing the facts in the light most favorable to the Commonwealth, we credit it on appeal. Pijor v. Commonwealth, 294 Va. 502, 516, 808 S.E.2d 408, 415 (2017).

Commonwealth, 58 Va. App. 35, 46, 707 S.E.2d 17, 23 (2011) (citations omitted) (quoting Jett v. Commonwealth, 34 Va. App. 252, 256, 540 S.E.2d 511, 513 (2001)).

### A. *Consideration of Existing Stet Docket Charges*

In his first assignment of error, Blackwell argues the trial court erred in admitting the PSR, containing the Stet Docket charges, because he "had not yet been convicted" of them. Despite this language used in his assignment of error, he states in his reply brief and acknowledged at oral argument that he does not, in fact, object to admission of the PSR, or the inclusion of the Stet Docket charges in it. Rather, his argument concerns the trial court's *use* of those charges at sentencing and the Commonwealth's failure to present adequate evidence of what the Stet Docket was. This discrepancy is fatal to Blackwell's argument, as his assignment of error does not encompass the argument he makes on appeal. Thus, we do not consider it. Rule 5A:20(c); see also Carroll v. Commonwealth, 280 Va. 641, 649, 701 S.E.2d 414, 418 (2010) (finding that appellant failed to "lay his finger on the error" argued on brief in his questions presented (now assignments of error)); Winston v. Commonwealth, 51 Va. App. 74, 81 n.4, 654 S.E.2d 340, 345 n.4 (2007) ("As appellant did not include this argument in his questions presented [(now assignments of error)], we will not address it on appeal."). Accordingly, we do not consider Blackwell's argument on the trial court's alleged consideration of the Stet Docket charges at sentencing.

### B. *Effect of Baltimore Residency on Blackwell's Sentence*

Blackwell makes two arguments regarding the purported effect of his Baltimore residency upon the duration of his sentence. First, he argues that the trial court erred in departing upwards from the PSR's recommended sentence because of his Baltimore residency. Second, he argues that the trial court erred in refusing to admit Blackwell to probation, CCAP, or "other alternative punishment," purportedly because he is from Baltimore.

As part of both of these arguments, Blackwell contends that there was a racial component to any comments about his being from Baltimore — specifically, that they were oblique references to his being "an urbanite African-American." In arguing this, Blackwell relies upon two moments from the sentencing hearing. Specifically, Blackwell argues that the prosecution gestured to the gallery when referencing how a longer sentence could "send a message" to Blackwell's "family and friends" in Maryland.[4] According to Blackwell, everyone in the gallery was African-American. Yet the record reflects neither of these facts — the gesture nor the race of the gallery members. In view of the record's silence, we cannot rely upon these allegations as evidence of racial bias. See Jackson v. Commonwealth, 44 Va. App. 218, 224, 604 S.E.2d 122, 125 (2004) ("An appellate court must dispose of the case upon the record and cannot base its decision upon appellant's petition or brief, or statements of counsel in open court. We may act only upon facts contained in the record." (quoting Smith v. Commonwealth, 16 Va. App. 630, 635, 432 S.E.2d 2, 6 (1993))).

Blackwell's allegations that his sentence was racially motivated also rest upon an exchange between counsel during closing arguments. In response to the Commonwealth's closing argument about "sending a message" to Maryland residents about bringing drugs into Virginia, Blackwell's counsel retorted: "I hope that Maryland isn't a euphemism for something else. I hope saying he is from Baltimore is not just some sort of euphemism they are throwing around and saying that this guy needs to be treated this way because of the fact that he is from Baltimore." The Commonwealth responded: "Maryland . . . It is a euphemism. Maryland . . . His record shows that Maryland doesn't take doing drug cases seriously and because of that I

---

[4] Blackwell's mother testified at the sentencing hearing, during which she identified Blackwell's other family members in the gallery.

would be concerned about him being on probation in Maryland. Quite frankly, it is more about sending a message." (Ellipses in original.)

As a preliminary matter, Blackwell failed to make this specific argument before the trial court. See Rule 5A:18. In addition, many facts — specifically, the alleged gesture to the all-African-American gallery — upon which his argument depends are not in the record. His argument, even had he preserved it, thus relies solely upon the exchange between opposing counsel regarding whether any reference to his Baltimore residency was a "euphemism." Yet even that exchange does not address race. Assuming the transcript accurately reflects the exchange and the prosecution intended to acknowledge that "Maryland . . . is a euphemism," the prompt explanation of that "euphemism" was that it stands for the state not taking "drug cases seriously," not Blackwell's race.

Finally, the record does not show that the trial court based its upward departure upon Blackwell being from Baltimore, much less his race. Instead, the trial court noted that the reason it departed upwards from the recommended sentencing guideline range was the "heroin epidemic." This comports with the evidence presented regarding the amount of heroin coming into the area, its increasingly devastating impact upon the region, taken with the fact that Blackwell brought in a large amount of heroin — enough for 60 to 120 doses. Though the trial court, when imposing Blackwell's sentence, noted that the prosecution's arguments were "well-founded," it did not specifically note which, of the many arguments presented, it referred to, and it did not mention Blackwell's Baltimore residency. Thus, we take the trial court at its word and presume its stated rationale for departing from the discretionary guidelines — the heroin epidemic — was, in fact, its actual rationale, rather than Blackwell's city of residence or his race.

As to Blackwell's argument that the trial court erred in declining to consider or impose alternative punishment like CCAP or probation,[5] "[w]e have previously 'noted the wide latitude the legislature has afforded trial courts in fashioning rehabilitative programs for defendants.'" Hunter v. Commonwealth, 56 Va. App. 582, 587, 695 S.E.2d 567, 569-70 (2010) (quoting Nuckoles v. Commonwealth, 12 Va. App. 1083, 1085, 407 S.E.2d 355, 356 (1991)). A defendant is not entitled to probation; rather, it "represents 'an act of grace on the part of the Commonwealth to one who has been convicted and sentenced to a term of confinement.'" Id. at 587, 695 S.E.2d at 569 (quoting Price v. Commonwealth, 51 Va. App. 443, 448, 658 S.E.2d 700, 703 (2008)). Putting aside the fact that the record contains no indication that the trial court failed to consider alternatives to incarceration, or that it declined to impose them on the grounds Blackwell alleges, it did not abuse its discretion in not imposing such alternatives. In fact, there were numerous reasons the trial court could have determined that CCAP was not appropriate in Blackwell's case. First, the probation officer determined that CCAP is meant for "medium to high-risk offenders" and that her understanding was that it "really want[s] to focus on even more at-risk" offenders than Blackwell.[6] Furthermore, in arguing that Blackwell should be put in the CCAP, defense counsel admitted "I don't know much about it," except that it is

---

[5] There appears to be a discrepancy between Blackwell's assignment of error and his own characterization of his argument. He assigned error to the trial court "refus[ing] to admit [Blackwell] to probation, CCAP, or other alternative punishment because he is from Maryland"; however, he clarifies in his reply brief that he "does not argue the trial court erred not to *impose* alternatives to incarceration," but that it "erred not to *consider* alternatives to incarceration on grounds [Blackwell] was from Baltimore, Maryland." (Emphasis added.) Thus, Blackwell's assignment of error does not encompass what he claims to argue. Nevertheless, given that Blackwell's argument appears to comport with his assigned error, we decline to find this procedurally defaulted under Rule 5A:20(c), and instead address it on the merits.

[6] She further explained that the issue with the previous "Detention and Diversion" programs was that "a lot of low-risk offenders were going in . . . so when they had someone who really needed to be in the program which was at medium or high risk there wasn't a bed available."

"evidence-based" and includes job training. Accordingly, the trial court did not abuse its considerable discretion in declining to order Blackwell participate in CCAP, probation, or other alternative punishments.[7]

### III. CONCLUSION

Blackwell failed to preserve his argument regarding his Stet Docket offenses, and the trial court did not err in sentencing Blackwell to five years in prison with six months suspended, or in declining to impose probation or other alternative punishment.

Affirmed.

---

[7] To the extent that Blackwell raises constitutional arguments regarding equal protection or the Privileges and Immunities Clause in arguing that the trial court could not let his Baltimore residency influence his sentence, he also failed to make these arguments at trial. He asks this Court to apply the "ends of justice" exception to Rule 5A:18. At trial, he merely argued that imposing a sentence without probation because he was a Baltimore resident was "unfair." Even if there was reason to believe a constitutional violation may have occurred, that alone does not automatically trigger the ends of justice exception. See, e.g., Flanagan v. Commonwealth, 58 Va. App. 681, 694-95, 714 S.E.2d 212, 218-19 (2011).