COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Fulton and Callins
Argued at Richmond, Virginia

CORDONTE DOUGLAS HORTON

MEMORANDUM OPINION* BY
v.      Record No. 0870-22-2      JUDGE MARY GRACE O'BRIEN
FEBRUARY 13, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Cheryl V. Higgins, Judge

(Bryan Jones; Bryan J. Jones, LLC, on briefs), for appellant.
Appellant submitting on briefs.

Elizabeth Kiernan Fitzgerald, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


A jury convicted Cordonte Douglas Horton (appellant) of first-degree murder, in violation

of Code § 18.2-32, attempted robbery, in violation of Code § 18.2-58, and using a firearm in the

commission of a felony, in violation of Code § 18.2-53.1. On appeal, he argues that the court

erred by (1) finding the evidence sufficient to support his convictions, (2) joining his case for

trial with his codefendant, (3) denying his suppression motion, (4) admitting photographs from

his cell phone and evidence from his mother's house, and (5) not ordering a mistrial after a juror

asked to be released during deliberations. For the following reasons, we affirm.

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we "discard the

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

a. Incident and Investigation

On October 16, 2020, Gabriel Price and his girlfriend Fliciti Sanchez were in Sanchez's car when Price said that he "needed some money." Sanchez understood this to mean that Price intended to sell marijuana. Sometime between 9:00 and 10:00 p.m., Price drove them to Mallside Forest Court ("Mallside"), an apartment complex in Albemarle County near Charlottesville. Price had a .45 caliber firearm in his lap and a backpack with marijuana near his feet. Sanchez testified that Price regularly drove with a firearm in his lap or in the cupholder.

When they reached Mallside, Sanchez's friend Isaiah Zampini approached from the apartment's playground area and entered the vehicle through the back driver's side door. The three spoke for five to ten minutes. According to Sanchez, when the time came to consummate the drug transaction, Zampini seemed to reach for his money but suddenly "lunged forward and attacked" Price. Zampini climbed over the center console and reached for the gun in Price's lap. Price turned off the car and wrestled with Zampini. Sanchez testified that "at some point" while they wrestled, "the gun got cocked and a shot was fired." Zampini then got out of the car through the driver's side door.

"Almost immediately," a second man appeared at the car door with a firearm and shot twice at Price. Sanchez, who was huddled on the floorboard, saw the shooter's hand and the black square barrel of his gun but did not see the shooter's face. Sanchez did not see Zampini carrying a gun.

Price restarted the car and tried to drive toward the hospital but soon had to pull over. Sanchez called 911, and police arrived a few minutes later. Price was transported to the hospital, where he ultimately died from a gunshot wound to the chest.

By the time the police arrived, Sanchez had moved the backpack of marijuana to the trunk. She looked for Price's gun but could not find it. Sanchez initially told the 911 operator and police that she was depositing a check at the bank when two men robbed her and Price. She testified that she lied because she "was scared for" Zampini—who was 15 years old at the time of the shooting—and "wanted to protect him as much as [she] could" because she "still saw him as a little brother."

Sanchez reviewed a photo lineup at the police station but was unable to identify the shooter. She testified that she knew beforehand she would be unable to identify the shooter but nevertheless had told police, "I'm sure if I saw the face it would click." She also told police that the shooter was about the same size and age as Zampini. When reviewing pictures of appellant from Facebook, Sanchez told the police that he looked too old to be the shooter.

At trial, Sanchez explained that she "was disoriented" and "spewing nonsense" during her initial interactions with the police. She further explained that she was "assuming and hoping that [Zampini] wouldn't have been with an adult that night" and "was assuming he was with another kid."

Several witnesses testified that they referred to appellant as "Day-Day" and that he used the Facebook display name of "Ballyworld Day-Day." When the police asked Sanchez if she knew someone named Day-Day, she responded that the name sounded familiar and that she thought Zampini had a friend called Day-Day.

The Commonwealth presented testimony from individuals who interacted with appellant on the date of the shooting. Appellant's friend Anthony Spencer gave appellant a ride from

Richmond to Charlottesville. Keamera Taylor and appellant's cousin, Jahmya Miller, both socialized with appellant at Mallside that night. Appellant had exchanged text messages with Miller earlier in the day, using the account "Jaccboy daedae." When Miller texted that she wanted marijuana and would be at Mallside, appellant responded, "tell z." At Mallside, Miller texted appellant at 9:29 p.m. asking him to "come outside." Miller and Taylor "hung out" with appellant and Zampini in a first-floor breezeway near Mallside's playground. Security camera footage confirmed this interaction, showing two individuals of differing sizes standing in the breezeway before being joined by two other people between 9:30 and 9:40 p.m. Taylor estimated that they all talked for 10 or 20 minutes before appellant and Zampini walked away. She further testified that someone ran past about 20 minutes later, but it was too dark to see who it was. Security camera footage showed two individuals of differing sizes run by the breezeway at 9:57 p.m. At 10:00 p.m., Miller texted appellant, "I can't believe u."

Briana Jordan, who lived at Mallside, also saw appellant that night. Appellant came to her apartment sometime before 10:00 p.m. and asked if she could give him and his friend a ride. Jordan did not recognize appellant's friend but drove them to the other side of town.

The police searched Sanchez's car. In the driver's seat, they found Price's cell phone, a 9mm cartridge casing, and a bullet. They found a glass jar containing a green, leafy substance in the center console and a backpack containing marijuana in the trunk. They did not locate any firearms in the vehicle.

Police discovered a second cell phone between the driver's seat and center console. That phone's case contained appellant's Virginia identification card. The phone was turned on, and the notification screen showed Miller's "I can't believe u" message. Investigators extracted data from that phone, which had various applications with usernames such as "jaccboy," "Ballyworld

DayDay," and "zay," the latter of which had a profile picture of Zampini. The phone was also linked to a Facebook account with the username of "Cordonte.Horton.3."

Snapchat records showed six calls between the two phones on October 16 between 8:39 and 9:47 p.m. There were also several text messages: between 9:06 and 9:09 p.m., appellant's phone, using an account with the username "zso800," asked if Price was close, gave Price the Mallside address, and told Price to park near the playground. Additionally, over appellant's objection, the Commonwealth introduced photographs extracted from the phone. Some of the photographs depicted appellant, while others depicted a hand holding a black handgun with a square body.

At the scene, police recovered one 9mm cartridge casing, one .45 caliber cartridge casing, two bullet fragments, two unspent 9mm cartridges, and one unspent .45 caliber cartridge. They did not find any firearms.

On October 22, 2020, police executed a search warrant at appellant's mother's house in North Carolina, where they arrested appellant. Hours later, the police searched the house again and found Zampini hiding in a closet. They also found a box of PMC-brand 9mm ammunition in the house, which was the same brand recovered from the crime scene.

Albemarle County Police Detective Andrew Holmes interviewed appellant on the day of his arrest. Appellant told Detective Holmes that he had been at his mother's house in North Carolina on October 16 and had not seen Zampini since June 2020. He claimed surprise that police found Zampini in his mother's house and stated that Zampini must have arrived after the police arrested appellant. He stated that his girlfriend had his cell phone for several weeks and he never let Zampini use it. Appellant denied ever riding in Jordan's car. He initially told Detective Holmes that he was last in Charlottesville in September 2020; however, he amended that answer when confronted with a picture of himself at Mallside from October 10 and

acknowledged that he had been there on that date. Appellant ended the interview after Detective Holmes revealed that the police had his cell phone.

b. Pretrial Motions

After a grand jury indicted appellant, he moved to suppress evidence obtained from his cell phone that police found in the car Price had been driving. Appellant argued that the search warrant did not authorize the police to search his cell phone because the warrant did not specifically identify that phone or contain probable cause connecting that phone to the offense. At the suppression hearing, defense counsel provided the court with a copy of the search warrant but did not enter it into evidence; accordingly, the warrant is not part of the record on appeal. In his suppression motion, appellant quoted the search warrant as authorizing the search of the vehicle "and any 'cellular devices and content within such device' found in the vehicle." The court denied the motion. It relied on the search warrant affidavit asserting that Price was shot while in the vehicle to be searched during an attempted robbery and drug transaction on October 16, 2020. The court found a sufficient nexus between this offense and any cell phones recovered from the vehicle because it was reasonable that information about the potential drug deal would be found on a cell phone.

Appellant filed a motion in limine to exclude the evidence found at his mother's house, "includ[ing] guns, ammunition, and drugs." He also sought to exclude photographs obtained from his cell phone showing him carrying a firearm. He argued that no evidence linked the firearm or ammunition to the offenses and the risk of unfair prejudice substantially outweighed the probative value of the evidence. The court denied appellant's motion.

The Commonwealth moved under Rule 3A:10(a) to try appellant and Zampini jointly, arguing that separate trials would require the majority of the predicted 21 witnesses to testify twice about a common set of facts. Appellant opposed the motion, asserting that Zampini's

interests were adverse to his and Zampini might provide prejudicial testimony against him. When the court asked whether "the real risk of any kind of actual prejudice only comes about if . . . Zampini testifies," appellant's counsel responded, "I think that is fair to say, as far as what we know now. It's possible something else might come up, but I think that's probably true." The court granted the Commonwealth's joinder motion, finding that (1) the number of witnesses who would otherwise have to testify twice justified a joint trial and (2) appellant failed to demonstrate that joinder would prejudice a specific trial right.

c. Jury Deliberations

During jury deliberations, one of the jurors sent the court a note, reading: "Dear, Your Honor, English is my second language[.] I am not sure that all the things were understood correctly. I'm very afraid for that. So, can you please release me from this case?" Appellant expressly objected to the court releasing the juror and made no other motions concerning that juror. The court declined the juror's request to be released.

The jury ultimately convicted appellant of first-degree murder, attempted robbery, and use of a firearm in the commission of a felony. The court sentenced appellant to 75 years' imprisonment with 20 years suspended.

ANALYSIS

I. Joinder

Appellant argues that the court erred by granting the Commonwealth's motion to try him and Zampini jointly. Under Code § 19.2-262.1, if the Commonwealth shows "good cause" for a joint trial, "the court shall order persons charged with participating in contemporaneous and related acts or occurrences or in a series of acts or occurrences constituting an offense or offenses, to be tried jointly unless such joint trial would constitute prejudice to a defendant." But if the court finds that a joint trial would prejudice a defendant, "the court shall order severance as

to that defendant or provide such other relief justice requires." Code § 19.2-262.1. We review a court's determination as to good cause and prejudice for an abuse of discretion. *Allen v. Commonwealth*, 58 Va. App. 618, 622-23 (2011); *see also Dickerson v. Commonwealth*, 29 Va. App. 252, 254 (1999). "A court has abused its discretion if its decision was affected by an error of law or was one with which no reasonable jurist could agree." *Tomlin v. Commonwealth*, 74 Va. App. 392, 409 (2022). When affirming a ruling made before trial, we may consider both the proffers made at the pretrial hearing and the evidence presented at trial. *Allen*, 58 Va. App. at 620-21.

Appellant does not argue that the Commonwealth failed to show good cause for a joint trial. Rather, he contends that the court erred in determining that a joint trial would not prejudice his trial rights. We find no error with the court's determination. Once the Commonwealth demonstrates good cause, a defendant must prove that "a joint trial would cause 'actual prejudice' to his rights—not theoretical or hypothetical prejudice." *Id.* at 623 (quoting *Randolph v. Commonwealth*, 24 Va. App. 345, 363 (1997)). "Criminal defendants 'are not entitled to severance merely because they may have a better chance of acquittal in separate trials.'" *Id.* at 624 (quoting *Zafiro v. United States*, 506 U.S. 534, 540 (1993)). Rather, they must show a "serious risk" that joinder would impair "a specific trial right" or "prevent the jury from making a reliable judgment about guilt or innocence." *Id.* (quoting *Zafiro*, 506 U.S. at 539).

Appellant's only argument is that because Zampini blamed the killing on another shooter, who the Commonwealth alleged was appellant, "the jury would not be able to believe [Zampini] without disbelieving [appellant]," and therefore joinder would prevent the jury from making a reliable judgment. However, Zampini did not testify at trial, nor did the Commonwealth introduce any statements by Zampini. Appellant has therefore not shown any actual prejudice. He has not identified any evidence admitted against him that would not have been admitted had

the Commonwealth tried him and Zampini separately. Indeed, appellant conceded at the joinder hearing that his prejudice concern would likely arise only if Zampini testified. Accordingly, the court did not abuse its discretion by granting the Commonwealth's joinder motion.

## II. Suppression Motion

Appellant also challenges the court's denial of his motion to suppress evidence obtained from his cell phone. Specifically, he contends that the warrant lacked sufficient specificity or probable cause to authorize a search of his cell phone. The search warrant and associated affidavit, however, are not included in the appellate record. Appellant insists that the court's explanation of its ruling contained sufficient facts to allow us to reach his assignment of error, notwithstanding the absence of these documents.

"The burden is upon the appellant to provide [the appellate court] with a record which substantiates the claim of error. In the absence [of a sufficient record], we will not consider the point." *Dixon v. Dixon*, 71 Va. App. 709, 716 (2020) (alterations in original) (quoting *Robinson v. Robinson*, 50 Va. App. 189, 197 (2007)). Here, the court's references to selected facts in the search warrant affidavit are insufficient to enable appellate review. We cannot determine whether the affidavit contained additional facts not mentioned by the court. Even if we agreed with appellant that the court's reasoning was flawed, we lack an adequate record to determine whether the court reached the right result for a different reason. *See Vandyke v. Commonwealth*, 71 Va. App. 723, 731 (2020) (explaining "right-result-different-reason principle"). Because appellant failed to provide a record substantiating his claim of error, we cannot consider the issue on appeal. *See Smith v. Commonwealth*, 16 Va. App. 630, 635 (1993) ("An appellate court must dispose of the case upon the record and cannot base its decision upon appellant's petition or brief, or statements of counsel in open court.").

III.  Admissibility of Evidence

Next, appellant argues that the court erred by admitting evidence of ammunition found in the house where he was arrested and pictures of a firearm retrieved from his cell phone. "[D]ecisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'"  *Nottingham v. Commonwealth*, 73 Va. App. 221, 231 (2021) (quoting *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019)).  Relevant evidence is evidence with "any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence."  Va. R. Evid. 2:401.  In Virginia, "[a]ll relevant evidence is admissible" except in specific circumstances.  Va. R. Evid. 2:402(a).  For example, "[r]elevant evidence may be excluded if: (a) the probative value of the evidence is substantially outweighed by (i) the danger of unfair prejudice, or (ii) its likelihood of confusing or misleading the trier of fact."  Va. R. Evid. 2:403(a).  "[I]n determining whether [relevant] evidence should be admitted, the circuit court must apply a balancing test to assess the probative value of the evidence and its prejudicial effect."  *Lee v. Spoden*, 290 Va. 235, 251 (2015) (second alteration in original) (quoting *Gamache v. Allen*, 268 Va. 222, 227 (2004)).

Appellant argues that the evidence was highly prejudicial and had low probative value because the Commonwealth did not specifically tie the ammunition or the picture of the firearm to the murder weapon.  We find no abuse of discretion.  Although appellant's access to the type of ammunition and firearm used to kill Price did not prove his identity as the shooter, it made it more likely.  Appellant's arguments that the ammunition type is common and was found near someone else's belongings go to the weight rather than the admissibility of the evidence.  And although that evidence certainly prejudiced appellant to an extent, prejudicial evidence is only inadmissible when it is "unfair."  Va. R. Evid. 2:403(a)(i); *see Lee*, 290 Va. at 252 ("[T]he mere

- 10 -

fact that evidence is highly prejudicial to a party's claim or defense is not a proper consideration in applying the balancing test."). Evidence runs the risk of unfair prejudice when it tends "to inflame the passions of the trier or fact, or to invite decision based upon a factor unrelated to the elements of the claims and defenses in the pending case." *Lee*, 290 Va. at 251. Here, the challenged evidence pertained to whether appellant would have had the means to complete the elements of the offense, which is not the type of unfair prejudice contemplated by the rules. Accordingly, we cannot say that the court abused its discretion by admitting the evidence.

## IV. Mistrial

Appellant argues that the court erred by not declaring a mistrial in response to the note indicating that one of the jurors, who spoke English as a second language, was concerned that she did not fully understand the proceedings. Appellant acknowledges that he failed to preserve this argument at trial but argues that we should nonetheless consider the issue under the "ends of justice" exception to Rule 5A:18.

However, appellant not only failed to request a mistrial, but he also affirmatively objected to the court releasing the juror or taking any other corrective action. Accordingly, it is not Rule 5A:18 that precludes our review but, rather, the doctrine that "[a] party may not approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory." *Nelson v. Commonwealth*, 71 Va. App. 397, 403 (2020) (alteration in original) (quoting *Rowe v. Commonwealth*, 277 Va. 495, 502 (2009)). "[T]here is no 'ends of justice' exception to the approbate and reprobate doctrine," which is "'broader and more demanding than Rule 5A:18.'" *Id.* at 405 (quoting *Alford v. Commonwealth*, 56 Va. App. 706, 709 (2010)). As this Court has stated, "[i]t can hardly be a 'grave injustice' to a defendant's essential rights for a trial court to [make] an agreed-upon [ruling]." *Id.* (second and third alterations in original) (quoting *Brittle v. Commonwealth*, 54

Va. App. 505, 513 (2009)). Because appellant did not ask for a mistrial and in fact told the court that he wanted the juror to remain on the panel, "we are barred from reaching the merits of [appellant's] argument." *Id.*

## V. Sufficiency of the Evidence

Finally, we consider appellant's challenge to the sufficiency of the evidence. "On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The question on appeal[] is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

Appellant first challenges his convictions on the basis that the Commonwealth failed to prove that he was the shooter. "At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 423 (2003)). On appeal, we review the trier of fact's determination regarding the identity of the criminal actor in the context of "the totality of the circumstances." *Brown v. Commonwealth*, 37 Va. App. 507, 523 (2002) (quoting *Satcher v. Commonwealth*, 244 Va. 220, 249 (1992)).

Sufficient evidence supports the jury's conclusion that appellant shot Price. The record reflects that on October 16, 2020, appellant rode from Richmond to Charlottesville with a friend. He had been exchanging text messages with his cousin Miller that day, using an account

reflective of his nickname "Day-Day." When Miller texted that she wanted marijuana and would be at Mallside, appellant responded, "tell z," referring to Zampini. Shortly after 9:00 p.m., the phone that had texted Miller also texted Price to arrange a meeting at Mallside near the playground. That phone made several calls to Price's phone during this time period as well.[1]

Miller and her friend Taylor testified that they socialized with appellant and Zampini on a breezeway near the Mallside playground. Miller's text message to appellant saying "come outside" and the security camera footage indicate that this interaction occurred between 9:30 and 9:50 p.m. According to Sanchez's testimony, she and Price arrived sometime before 10:00 p.m. and encountered Zampini, who approached from the playground area and got into their car. The evidence therefore established that appellant and Zampini were together mere minutes before the offense. The jury could then conclude that the incident happened as Sanchez described, during which time appellant's phone was left in the car. Security camera footage shows two people running past the breezeway after the shooting and supports a finding that the two people were appellant and Zampini. At 10:00 p.m., around the time of the shooting, Miller texted appellant, "I can't believe u." Appellant then went to Jordan's apartment and asked her to drive him and his friend away from the scene.

The police later arrested appellant and Zampini at appellant's mother's house, where the police found ammunition of the same brand and caliber as the ammunition used to kill Price. Appellant had photographs on his phone depicting himself and a firearm matching the description given by Sanchez. Finally, appellant repeatedly lied to the police and claimed, contrary to the overwhelming evidence, that he was not near Charlottesville the night of the

---

[1] The account on appellant's phone making these contacts had the username "zso800," which other evidence linked to Zampini. For purposes of assessing the sufficiency of the evidence that appellant shot Price, it is irrelevant whether appellant or Zampini made these contacts luring Price to the scene.

murder and had not seen Zampini in months. The above circumstantial evidence is sufficient for a reasonable jury to conclude that appellant shot Price.

Appellant also argues that the Commonwealth failed to prove that he possessed the specific intent to rob Price. We disagree. The jury could credit Sanchez's testimony that Zampini lunged at Price with no apparent provocation and exited the car just as appellant appeared at the door with a firearm of his own. A reasonable jury could infer from this coordinated activity that Zampini sought to disarm Price and thereby ease appellant's ability to rob him. In other words, a reasonable jury could find that appellant and Zampini conspired together and attempted to rob Price. Accordingly, sufficient evidence supports each of appellant's convictions.

## CONCLUSION

For these reasons, we affirm appellant's convictions for first-degree murder, attempted robbery, and using a firearm in the commission of a felony.

*Affirmed.*