COURT OF APPEALS OF VIRGINIA


Present:  Judges Humphreys, Clements and Agee
Argued at Richmond, Virginia


BARBARA PATTERSON
                                              OPINION BY
v.    Record No. 1585-01-2     JUDGE JEAN HARRISON CLEMENTS
                                           FEBRUARY 19, 2003
CITY OF RICHMOND


          FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    Margaret P. Spencer, Judge

          Darren Marshall Hart (A. Gray Collins, III;
          Collins & Hart, on brief), for appellant.

          Phillip Hairston (John A. Rupp, City
          Attorney; Kelly C. Harris, Assistant City
          Attorney, on brief), for appellee.


     Barbara Patterson was convicted in a bench trial of failing

to exercise proper care and control of her dogs to prevent them

from becoming a public nuisance, in violation of Richmond City

Code § 4-63.  On appeal, she contends the trial court erred (1)

in failing to strike the evidence presented by the City of

Richmond (City) on the grounds it was insufficient to show she

created a public, rather than private, nuisance; (2) in refusing

to quash the summons on the grounds it was based on events not

directly observed by the issuing officer; (3) in admitting into

evidence under the business records exception to the hearsay rule

a police activity log from the City's Bureau of Emergency

Communications; and (4) in amending the summons issued to her by

substituting a range of dates for the single offense date in the

original summons.  For the reasons that follow, we affirm

Patterson's conviction.

## I.   BACKGROUND

In accordance with familiar principles of appellate review, we view the evidence presented at trial and all reasonable inferences fairly deducible from that evidence in the light most favorable to the City, the party that prevailed below.  See Dowden v. Commonwealth, 260 Va. 459, 461, 536 S.E.2d 437, 438 (2000).

So viewed, the evidence established that, between February 12, 2000, and July 25, 2000, Patterson, a sixty-six-year-old legally blind woman, had five to eight dogs at any one time at her single-family residence.  At trial, Patterson testified she owned five dogs, two of which she used as service animals.  She further testified that, as a member of the Central Virginia Doberman Rescue League, she occasionally provided safehousing for other dogs.

John Russell, who lived with his wife and two children three houses away from Patterson on the same side of the street, testified the "continuous" barking of "any number of [Patterson's] dogs" at "any hour of the day" bothered his family since the "day [they] moved into the house in August of 1999." Russell, a dog owner himself, further testified the barking of

Patterson's dogs, often lasting for "three to four hours" at a time, woke his family up at 6:30 a.m. during the week and on weekends "on a frequent basis" and "disturbed" his family throughout the day. According to Russell, the barking was "a constant annoyance" to his family. It interfered with their celebration of holidays, their use of the yard, and their ability to entertain guests, and "ruined" their enjoyment of their home. Russell testified that, had he known he and his family would be subject to the "constant and continual" barking of Patterson's dogs, he would not have bought a house in that neighborhood.

In October 1999, "fed up with having to call [Patterson] constantly to tell her" her dogs were "out for three or four hours . . . barking" and realizing "it was obvious there was no working it out," Russell began to call Animal Control to complain. In his testimony, Russell identified three specific days between February 12, 2000, and July 25, 2000, that he filed complaints regarding the barking of Patterson's dogs; namely, on February 12, 2000, March 18, 2000, and May 6, 2000. According to Russell, Patterson's dogs barked continuously for approximately two and one-half hours on February 12, 2000, "in excess of several hours" on March 18, 2000, and for the "entire" more-than-three-hour period Patterson was not home on May 6, 2000.

Copies of the relevant pages of Animal Control's dispatch log were admitted into evidence and confirm that Animal Control received complaints from Russell about the barking of Patterson's dogs on February 12, 2000, and March 18, 2000. The log also shows that Russell's wife complained to Animal Control about the

- 3 -

barking of Patterson's dogs on April 14, 2000, April 20, 2000, May 31, 2000, June 9, 2000, and July 18, 2000, and that Russell's next-door neighbor lodged a similar complaint about Patterson's dogs on April 1, 2000.

Debra Rhoads, Patterson's next-door neighbor, testified the barking of Patterson's dogs, both when they were in Patterson's backyard or when the windows of Patterson's house were open, was "very annoying." It went on, according to Rhoads, for "extended periods of time" at night and in the morning, including weekends, and was "extremely loud." Rhoads testified the barking was so loud and incessant she could not leave her windows open when the weather was nice. Even with her windows closed, the barking disturbed her sleep and interfered with her ability to watch television or have a conversation in her family room. The barking further interfered with her use of her yard and her ability to entertain guests. Rhoads, who herself had a dog, testified that, had she known about the barking of Patterson's dogs before she moved in, she would not have bought her house.

Rhoads also testified there were "numerous times" between February 12, 2000, and July 25, 2000, that Patterson's dogs "barked excessively." She specifically recalled calling Animal Control to complain about the barking on the evening of April 19, 2000, when it "appeared [Patterson] was not home" and "the dogs barked incessantly for quite an extended period of time."

On the evening of July 25, 2000, Animal Control Officer Donna Miskovic went to Patterson's house to investigate complaints received by Animal Control regarding the barking of Patterson's dogs. Miskovic, who had previously responded to

- 4 -

complaints about Patterson's dogs and issued notices to Patterson regarding the "excessive and continuous" barking of her dogs, testified that, upon her arrival at Patterson's house on July 25, 2000, she heard Patterson's dogs barking in a manner that was "excessive, continuous," and, it being late in the evening and nearly dark, "untimely." Consequently, Miskovic, who had recently completed her "animal control training for the State of Virginia," issued a summons to Patterson for violating Richmond City Code § 4-63. Asked at trial about the basis for the summons she issued to Patterson, Miskovic testified that, had she not heard Patterson's dogs "barking that night," she "would not have written [the] summons."

Sitting without a jury, the trial court heard the evidence and the arguments of counsel, overruled Patterson's motion to strike the City's evidence as being insufficient to prove she violated Richmond City Code § 4-63, and found Patterson guilty as charged. At sentencing, the trial court suspended the imposition of sentence for two years conditioned on Patterson's compliance with certain terms and conditions, including limiting the number of dogs she keeps at her house to her two service dogs and "responsibly manag[ing] her dogs' barking."

This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

On appeal, Patterson contends the evidence presented at trial was insufficient, as a matter of law, to prove beyond a reasonable doubt that the barking of her dogs constituted a public, rather than private, nuisance, in violation of Richmond City Code § 4-63, because the City presented testimony of only

two households that were adversely affected by the alleged nuisance.  Relying on White v. Town of Culpeper, 172 Va. 630, 1 S.E.2d 269 (1939), Patterson argues that "the City must prove that Patterson maintained a public nuisance through the testimony of more than four persons."  Thus, Patterson concludes, the trial court erred in finding the City's evidence sufficient to sustain her conviction.  We disagree.

> Where the sufficiency of the evidence is challenged after conviction, it is our duty to consider it in the light most favorable to the [City] and give it all reasonable inferences fairly deducible therefrom.  We should affirm the judgment unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.

Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).  In addition, the "credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination."  Crawley v. Commonwealth, 29 Va. App. 372, 375, 512 S.E.2d 169, 170 (1999).

Patterson was convicted of violating Richmond City Code § 4-63.  That code section provides, in pertinent part, that "[n]o owner shall fail to exercise proper care and control of a dog or cat to prevent it from becoming a public nuisance."  Richmond City Code § 4-63(a).  Richmond City Code § 4-1 provides, in pertinent part, that "[p]ublic nuisance means, for purposes of [Chapter 4 of the Richmond City Code, entitled "Animal Control"], any dog or cat that . . . barks, whines, howls, or makes other annoying noises in an excessive, continuous, or untimely fashion."  Richmond City Code § 4-38 provides that "[i]t shall be

- 6 -

unlawful for any person to violate or fail, refuse or neglect to comply with any provision of this chapter, and except as otherwise provided in any section of this chapter, upon conviction thereof, such person shall be punished for a Class 4 misdemeanor."  None of these code sections require that a certain number of people be affected by the barking, whining, howling, or other "annoying" noise of a dog or cat for there to be a violation.

The Supreme Court's rationale in City of Virginia Beach v. Murphy, 239 Va. 353, 389 S.E.2d 462 (1990), governs the resolution of this appeal.  Murphy involved a dispute over the validity of a city's noise ordinance that made criminal as a public nuisance conduct that affected "any person."[1]  The trial

_____

[1] The ordinance at issue in Murphy provided, in relevant part:

> "(a) It shall be unlawful for any person to create, or allow to be created any unreasonably loud, disturbing and unnecessary noise in the city or any noise of such character, intensity and duration as to be detrimental to the life or health of any person or persons or to unreasonably disturb or annoy the quiet, comfort or repose of any person or persons.  The following acts, among others are declared to be loud, disturbing and unnecessary noise in violation of this section, but such enumeration shall not be deemed to be exclusive:
>
> (1)  The playing of any television set, radio, tape player, phonograph or any musical instrument in such a manner or with such volume as to annoy or disturb the quiet, comfort or repose of any person or persons.

court found the ordinance invalid, ruling that "the city 'may not under its general police power undertake to make conduct which affects only one person (any person) a <u>public</u> nuisance.'"  <u>Id.</u> at 354, 389 S.E.2d at 463.

On appeal, the Supreme Court initially stated as follows:

> If an ordinance makes criminal that conduct which is a public nuisance, it is a presumptively valid exercise of the locality's police power.  <u>White v. Town of Culpeper</u>, 172 Va. 630, 635, 1 S.E.2d 269, 272 (1939).  On the other hand, if the prohibited conduct is merely a private nuisance, it cannot be made criminal because a municipality has no authority under its police power to punish conduct which is a private nuisance.  <u>Id.</u> at 636, 1 S.E.2d at 272.  Thus, this decision turns on whether the forbidden conduct can be classified as a public nuisance or only a private nuisance.

<u>Murphy</u>, 239 Va. at 355, 389 S.E.2d at 463.  In drawing a distinction between the two types of nuisance, the Supreme Court described a private nuisance as "one which implicates or interferes with a right or interest that is <u>unique</u> to an individual, such as an interest in land."  <u>Id.</u>  Conversely, the Supreme Court noted,

> "'[i]f the annoyance is one that is common to the public generally, then it is a public nuisance.  The test is not the number of persons annoyed, but the possibility of annoyance to the public by the invasion of its rights.  A public nuisance is one that injures the citizens generally who may be so

---

> \*     \*     \*     \*     \*     \*     \*
>
> (b)  Any person who violates the provisions of this section shall be guilty of a Class 4 misdemeanor."

<u>Id.</u> at 354, 389 S.E.2d at 462-63 (quoting Virginia Beach City Code § 23-47 (emphasis added)).

circumstanced as to come within its
influence.'"

Id. at 356, 389 S.E.2d at 463 (quoting Couture v. Bd. of Educ. of
Town of Plainfield, 6 Conn. App. 309, 315, 505 A.2d 432, 435
(1986) (quoting Nolan v. New Britain, 69 Conn. 668, 678, 38 A.
703, 706 (1897) (citation omitted))).  "Thus," the Court
concluded, "the distinction between a public and a private
nuisance does not depend solely upon the number of people who are
actually affected, as the trial court held."  Id.

Turning to the noise ordinance before it, the Supreme Court
held as follows:

> The right not to be subjected to
> "unreasonably loud, disturbing and
> unnecessary noise," as provided in [the
> city's noise ordinance], is "common to all
> members of the general public," Restatement
> (Second) of Torts § 821B comment g (1977),
> and not particular to individuals in the
> enjoyment of their property.  In that sense,
> this ordinance differs from that in White,
> which attempted to control door-to-door
> solicitation and affected only the individual
> property rights of householders.
>
> For these reasons, we are of opinion
> that the trial court erroneously concluded
> that the activity proscribed in the ordinance
> could only be a private nuisance.

Id. at 356, 389 S.E.2d at 464.

Applying this reasoning to the present case, we conclude the
City was not required to prove that a particular number of people
were actually affected by the barking of Patterson's dogs for
that barking to constitute a public nuisance under Richmond City
Code § 4-63.  Like the subject ordinance in Murphy, the instant
ordinance, as applied here, is a noise ordinance.  It requires,
among other things, that dog owners properly control their dogs

to prevent them from barking "in an excessive, continuous, or untimely fashion."  Richmond City Code § 4-1; Richmond City Code § 4-63.  Plainly, the "right not to be subjected to" such barking is common to the public generally and not unique to "individuals in the enjoyment of their property."  Murphy, 239 Va. at 356, 389 S.E.2d at 464.  Hence, the barking of dogs "in an excessive, continuous, or untimely fashion" is a public nuisance.

Here, the record contains ample evidence to support the trial court's determination that Patterson failed to exercise proper care and control of her dogs to prevent them from becoming public nuisances.  Russell and Rhoads, both neighbors of Patterson, offered extensive testimony regarding the excessive, continuous, and untimely barking of Patterson's dogs they endured on several occasions between February 12, 2000, and July 25, 2000.  Furthermore, Officer Miskovic testified that she heard Patterson's dogs barking in an "excessive, continuous, and untimely" fashion on July 25, 2000.

We hold, therefore, that the evidence presented at trial was sufficient, as a matter of law, to prove beyond a reasonable doubt that the barking of Patterson's dogs constituted a public nuisance, in violation of Richmond City Code § 4-63. Accordingly, the trial court did not err in denying Patterson's motion to strike the City's evidence.

### III.  FAILURE TO QUASH SUMMONS

Patterson also contends the trial court erred in failing to quash the summons charging her with violating Richmond City Code § 4-63 because a misdemeanor summons or warrant may issue only when the offense is committed in the presence of the issuing

officer.  Patterson argues Officer Miskovic issued the summons in reliance on events she did not directly observe.  We disagree with Patterson's premise.

While it is true that an animal control officer may issue a summons for a violation of an ordinance only if the offense is committed in the officer's presence, see Code § 3.1-796.104, here Officer Miskovic specifically testified at trial that she heard Patterson's dogs barking in an "excessive, continuous, and untimely" fashion when she went to Patterson's home on July 25, 2000.  She further stated she would not have issued the summons had she not heard Patterson's dogs barking that night.  Thus, aware from her earlier visits to Patterson's home in response to neighbor's complaints that this was not an isolated occurrence, Miskovic issued the summons for a violation that was committed in her presence.  See Penn v. Commonwealth, 13 Va. App. 399, 412 S.E.2d 189 (1991) (noting that an offense is committed in an officer's presence when the officer directly observes the commission of the offense through his or her senses).

We hold, therefore, that the trial court did not err in denying Patterson's motion to quash the summons.

IV.  ADMISSION OF EMERGENCY COMMUNICATIONS LOG

Patterson further contends the trial court erred in admitting into evidence under the business records exception to the hearsay rule a log from the City's Bureau of Emergency Communications showing police dispatches to Patterson's address.  The City, Patterson argued, failed to lay a sufficient foundation for the admission of that log.

We are unable to review this claim because the appendix

- 11 -

filed in this case does not include the exhibit in question or any information regarding the position or other qualifications of the witness who testified about the exhibit. We cannot determine the propriety of the admission of the exhibit without that information.

The appendix must include "any testimony and other incidents of the case germane to the questions presented," Rule 5A:25(c)(3), and "exhibits necessary for an understanding of the case that can reasonably be reproduced," Rule 5A:25(c)(6). "The appendix is a tool vital to the function of the appellate process in Virginia. . . . By requiring the inclusion of all parts of the record germane to the issues, the Rules promote the cause of plenary justice." Thrasher v. Burlage, 219 Va. 1007, 1009-10, 254 S.E.2d 64, 66 (1979) (per curiam). Thus, the filing of an appendix that complies with the Rules, is "essential to an informed collegiate decision." Id. Because the appendix filed in this case does not contain parts of the record that are essential to the resolution of the issue before us, we will not decide the issue.

Furthermore, we do not presume on appeal that the trial court has erred. Indeed,

> "[w]e have many times pointed out that on appeal the judgment of the lower court is presumed to be correct and the burden is on the appellant to present to us a sufficient record from which we can determine whether the lower court has erred in the respect complained of. If the appellant fails to do this, the judgment will be affirmed."

Smith v. Commonwealth, 16 Va. App. 630, 635, 432 S.E.2d 2, 6 (1993) (quoting Justis v. Young, 202 Va. 631, 632, 119 S.E.2d 255,

- 12 -

256-57 (1961)).

Because the appendix is insufficient to decide the present issue, we affirm the judgment of the trial court.

## V.  AMENDMENT OF SUMMONS

Finally, Patterson contends the trial court erred in amending the summons to include a range of dates, February 12, 2000, through July 25, 2000, that was not included in the original summons.  She maintains that, because its jurisdiction is derivative, the trial court may not expand its jurisdiction by hearing evidence regarding the barking of her dogs that took place on any dates other than July 25, 2000.

Again, however, we are unable to review this claim due to deficiencies in the appendix before us.  We find nothing in the appendix relating to either the hearing on the amendment of the summons or the trial court's ruling concerning that amendment. Without that information, we cannot determine the issue before us.  Hence, we affirm the judgment of the trial court.  Id.

For these reasons, we affirm Patterson's conviction.

Affirmed.

- 13 -