COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Petty, and Huff
Argued by videoconference

UNPUBLISHED

JASMINE WALKER

v.      Record No. 0451-20-2

BREYON PIERCE                                                    MEMORANDUM OPINION[*] BY
                                                                              JUDGE GLEN A. HUFF
JASMINE WALKER                                                  DECEMBER 8, 2020

v.      Record No. 0452-02-2

BREYON PIERCE


FROM THE CIRCUIT COURT OF SURRY COUNTY
Carson E. Saunders, Jr., Judge

Janipher W. Robinson (Robinson and Greene, on brief), for
appellant.

Archer L. Jones, II (Lindsay Rogers Hartz, Guardian *ad litem* for
the minor children; Archer L. Jones, II, P.C.; Hartz Law, P.C., on
brief), for appellee.


Jasmine Walker ("mother") appeals two protective orders issued by the trial court that

found that mother committed an act of family abuse and ordered her not to commit any future

acts of family abuse against her children.[1] In five assignments of error, mother contends that the

trial court lacked jurisdiction, admitted inadmissible evidence, and erred in holding that the

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] On May 22, 2020, this Court ordered that the cases be consolidated for purposes of
briefing and argument.

evidence was sufficient to issue the protective orders. This Court finds each argument to be without merit and affirms the judgment below.

## I. BACKGROUND

Mother and Breyon Pierce ("father") have twin children—one boy and one girl—who were seven years old at the time of these incidents. Mother and father have joint legal custody of the children, and father has primary physical custody.

On August 31, 2019, the children were with mother and her sister in Richmond. All four went shopping at Walmart. While there, the twins began acting "rowdy" and the son spilled a milkshake. Mother decided to separate them and walked her son outside to her car. While walking him outside, mother pinched him on the back of his arm as punishment. After reaching the car, mother put her son in the backseat of the vehicle. She rolled down one window approximately two inches, locked the doors, and then left him there until she finished shopping.[2]

On September 2, 2019, the children returned to their father's house. His daughter told him that mother had locked his son alone in the backseat of her car for over an hour as punishment. His son confirmed this story when father questioned him, stating that it was light out when mother left him and that it had gotten dark before mother returned. His son told him that it was hot out and that he cried while waiting for mother to return. Father also noticed bruising on the back of his son's arm.

---

[2] Evidence at trial varied as to how long he was left in the vehicle. Mother and her sister testified that it was approximately ten minutes. Father presented evidence that ranged between forty-five and ninety minutes. The trial court did not resolve this conflict. Instead, the trial court noted that "regardless, we know it wasn't 60 seconds, but whether or not it was 10 minutes or an hour and 26 minutes, I think pretty much everybody has acknowledged it was too long and a mistake that it happened at all."

On September 3, 2019, father went to the Surry County Sheriff's Office regarding the incident. Father spoke with both a sheriff's deputy and a social worker, who later interviewed the children.

On September 9, 2019, father petitioned for emergency protective orders on behalf of both children against mother. The juvenile and domestic relations ("JDR") district court issued both emergency protective orders and docketed a full hearing on September 20. Mother did not appear at the September 20 hearing. In her absence, the JDR court found that mother committed an act of family abuse and issued two-year protective orders prohibiting mother from having any contact with the twins. Mother appealed both orders *de novo* to the circuit court.

On appeal to the circuit court, mother moved to dismiss, arguing that the preliminary protective orders issued on September 9, 2019, were never served on her and, therefore, the JDR court lacked jurisdiction to enter the permanent protective orders issued on September 20. Mother further contended that the circuit court lacked jurisdiction to adjudicate the merits of the petition because the order appealed from was entered without jurisdiction. The circuit court denied the motion, stating the following:

> The Court hasn't heard anything other than [mother's] claim that she wasn't served that would suggest to the Court that the service was defective. In fact, the Court finds that service was properly made and actual personal service was made. Deputy Jefferson shows that he served it, that it was personal service. There are [sic] extensive description information. I would note that it's not just the last four digits of the social; it's the entire social security number, which I don't think issues on any court documents today from clerk's offices. The Court does find that service of the preliminary protective order to be valid on[mother] September 13th . . . .

During father's testimony, he was asked about the bruising he noticed on the back of his son's arm. Father testified that his son told him that mother had pinched him there as a punishment. Father then testified that there were other instances of mother pinching him there

that also resulted in bruising. Mother objected to the relevance of these additional incidents, arguing that "[i]t is not applicable to what happened on August 31st what [father] has seen in the past." The circuit court sustained the objection, but afforded father an opportunity to lay a foundation as to when those events happened so that the trial court could determine if they were close enough in time to be relevant. Mother objected to the attempt to lay that foundation, once again arguing that any other incident was "not relevant to what happened on August 31." The trial court overruled mother's objection and allowed father to testify that he had also seen bruising on his son's arm from mother pinching him earlier that year in May. Based on that foundation, the circuit court determined that the May 2019 pinching incident was relevant because it was close enough in time to the August 2019 incident.

Father also noted that his son "has a history of febrile seizures where in this condition if his temperature hits a certain degree, he has a seizure." He noted that his son has had multiple seizures in the past. Father explained that he was worried that, if his son had a febrile seizure while unsupervised, he could potentially choke to death on his own saliva and mucus while seizing. Mother did not object to this testimony.

Later, father asked the social worker during her testimony whether she was aware that his son suffered febrile seizures. Mother objected to the question's foundation, arguing that "[t]here's no evidence presented to the Court whether or not the seizure is exacerbated pursuant to temperature. We don't have any expert who said that. The father didn't say that." The court noted that father had already testified to the history of febrile seizures and that they can be exacerbated by temperature. The trial court then overruled the objection.

Ultimately, the circuit court held that mother had committed an act of family abuse and issued both protective orders. However, unlike the JDR court order, the circuit court did not place any limitation on mother's contact with the children. The circuit court merely ordered that

mother shall not commit any further acts of family abuse. It indicated that any effects that order would have on custody or visitation arrangements would be left to an upcoming custody hearing before the JDR court. This appeal followed.

## II. ANALYSIS

Mother presents five arguments on appeal. First, mother claims that the circuit court lacked jurisdiction over the matter because she was not properly served. Mother also contends that the trial court made two evidentiary errors by admitting evidence of the May 2019 pinching incident and the social worker's testimony regarding her son's febrile seizure condition. Lastly, mother challenges the sufficiency of the evidence underlying both the circuit court's finding of family abuse and its finding that her daughter had a reasonable apprehension or fear of future abuse. This Court finds each argument to be without merit.

### A. There was no defect in service.

Mother contends that the circuit court erred in denying her motion to dismiss because she did not receive service of the protective orders. Specifically, mother challenges the circuit court's reliance on the returns of service for each protective order. She argues that the returns of service are insufficient to prove that she was served and that father was required to obtain testimony from the deputy that purportedly served mother—or some other form of direct evidence. This Court disagrees.

The essence of mother's argument is that the returns of service were insufficient to be *prima facie* proof that she was served. That argument is plainly and explicitly rebutted by Code § 8.01-326. Pursuant to that section, "[t]he return of a sheriff shall be prima facie evidence of the facts therein stated." Code § 8.01-326.

In other words, introduction of the returns of service into evidence satisfied father's burden of production. The question then turned to who carried the burden of persuasion. The

- 5 -

trial court made a finding that mother was served, implicitly determining that the returns of service were more credible than mother's bare claim that she did not receive service. This finding is supported by the evidence. Therefore, the circuit court did not err in denying mother's motion to dismiss.

B. Mother failed to preserve her argument regarding the May 2019 pinching incident.

On appeal, mother argues that the evidence of the May 2019 pinching incident was inadmissible because it was "uncharged misconduct" offered to show her propensity to commit a similar act. This argument is waived, however, for failure to raise it to the trial court.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Rule 5A:18. "Under this rule, a specific argument must be made to the trial court at the appropriate time, or the allegation of error will not be considered on appeal." Edwards v. Commonwealth, 41 Va. App. 752, 760 (2003) (*en banc*). Furthermore, "[m]aking one specific argument on an issue does not preserve a separate legal point on the same issue for review." Id.

Mother only objected to the testimony regarding the May 2019 pinching incident on relevancy grounds—an argument not pursued on appeal to this Court. Mother never argued to the trial court that the May 2019 pinching incident was inadmissible character evidence. These are distinct legal arguments. Compare Va. R. Evid. 2:401 & 2:402, with Va. R. Evid. 2:404; see also Spencer v. Commonwealth, 240 Va. 78, 90 (1990) (explaining that relevant character evidence of prior bad acts is only admissible if its probative value outweighs the incidental prejudice). Therefore, mother's relevancy objection failed to preserve her argument that the

evidence was inadmissible character evidence.  Because that argument was not presented to the trial court, it is procedurally defaulted under Rule 5A:18.[3]

C.  The trial court did not err in admitting evidence of the son's febrile seizures.

Mother contends that the trial court erred in allowing the social worker to testify regarding her son's history of febrile seizures.  Specifically, mother contends that there was no foundation that her son still suffered from febrile seizures or that hot temperatures could exacerbate them.  This Court disagrees.

Mother objected to the testimony of the social worker regarding her son's history of febrile seizures for lack of foundation.  However, at that point, father's testimony provided the foundation mother argues was absent.  Father testified that his son "has a history of febrile seizures where in this condition if his temperature hits a certain degree, he has a seizure."  He also testified that his son has had multiple seizures in the past.  This testimony was admitted without objection by mother.  Therefore, at the time the social worker testified, father's testimony provided the foundation mother claims was missing.

Mother further argues that the trial court erred "given the unrefuted testimony [of mother and her sister] that [her son] had not had such seizures since he was about 3 years old." However, this argument fails to respect the sequence in which the evidence was provided at trial. The testimony mother refers to occurred *after* father's case-in-chief.  Furthermore, mother opted not to proffer such evidence when she lodged her objection.  Therefore, this portion of mother's argument was not even presented to the trial court at the time mother claims the trial court erred in not considering it.

---

[3] Rule 5A:18 contains both a good-cause and ends-of-justice exception.  However, mother does not contend that either exception to Rule 5A:18 applies, and this Court does not raise those exceptions *sua sponte*.  See Edwards, 41 Va. App. at 761.

In sum, the trial court did not abuse its discretion in allowing the social worker to testify regarding the son's history of febrile seizures.

### D. The evidence is sufficient to support both protective orders.

Mother argues that the evidence is insufficient to support either protective order because it did not prove that she committed an act of family abuse against her son and because it did not establish that her daughter had a reasonable apprehension of future harm.

"When an appellant challenges the sufficiency of the evidence, this Court views the evidence in the light most favorable to the prevailing party below. We presume the circuit court's decision is correct unless it is 'plainly wrong' or unsupported by the evidence." Stephens v. Rose, 288 Va. 150, 155-56 (2014).

Courts may issue protective orders in "cases of family abuse" to protect the health and safety of those involved. Code § 16.1-279.1. Family abuse includes "any act involving violence, force, or threat that results in bodily injury or places one in reasonable apprehension of . . . bodily injury." Code § 16.1-288.

### 1. The evidence is sufficient to prove that mother committed an act of family abuse.

Mother argues that the evidence was insufficient to show that she committed an act of family abuse. Specifically, mother argues that "the trial [c]ourt failed to give proper weight to her admission that on reflection she should not have put her son in the car by himself." Mother further contends that "the trial [c]ourt did not give sufficient weight to the fact that the two children had been acting up all day, that they as well [as her] were exhausted."

Mother admits that she locked her son—who has had heat-induced seizures in the past—in the backseat of a car with only one window slightly open and left him there alone for an extended period of time while she continued shopping. Such actions plainly rise to the level of

family abuse. Indeed, mother does not even argue that her actions fail to meet the statutory definition of family abuse.

Instead, mother's arguments highlight mitigating factors that have no bearing on whether her actions constitute family abuse. Mother's newfound recognition that she should not lock a seven-year-old child with a seizure condition alone in a car is certainly a step in the right direction, but it does not erase the gravity of her actions. Similarly, neither mother's exhaustion nor the behavior of the children before mother locked her son alone in the car have any bearing on the question of whether that action constituted family abuse.

Both of mother's arguments focus on mitigating factors relevant when fashioning the scope of the protective orders. However, neither have any bearing on whether her actions constituted family abuse. Mother admits to locking her seven-year-old child in the backseat of a car and then leaving him there so she could continue shopping. Therefore, the trial court's finding that mother committed family abuse is not plainly wrong or contrary to the evidence.

2. <u>The evidence is sufficient to prove that the daughter had a reasonable apprehension of future harm.</u>

Mother contends that the trial court erred in finding that her daughter had a reasonable apprehension of future abuse. Mother argues that "[t]here was no evidence introduced that her daughter was traumatized in any way by the actions taken by [mother] to her brother."[4] Therefore, mother avers, the trial court could not infer that her daughter had a reasonable apprehension of future harm.

---

[4] Father contends that mother waived this argument—which was first raised via a motion to strike after father's case-in-chief—because mother presented evidence in her defense. However, presentation of evidence does not waive arguments made in a motion to strike if that motion is renewed after presentation of evidence. <u>Rompalo v. Commonwealth</u>, 72 Va. App. 147, 154 (2020). Mother explicitly renewed her motion. Therefore, mother's arguments are properly preserved for review.

The daughter was with her brother when their mother decided that the two were misbehaving and needed to be separated. She watched her mother take her brother out of the store and then return without him. She was with her mother and aunt when they eventually returned to the vehicle in which her brother had been locked. She spoke to her brother afterwards and was aware that he was left alone and crying.

Mother emphasizes that her daughter did not see her brother get pinched or left in the vehicle and that nobody directly testified that her daughter was traumatized by the events. However, the standard is not whether the daughter directly witnessed or experienced the family abuse. The standard is whether she had a reasonable apprehension of future family abuse.

As this Court has already noted, locking a child in the backseat of a car and leaving him there alone for an extended period of time is sufficient to constitute family abuse. It should be obvious that a child can reasonably expect to face treatment from her parent similar to that received by her twin sibling. Therefore, the evidence is sufficient to prove that the daughter had a reasonable apprehension of facing the same form of family abuse.

## III. CONCLUSION

For the foregoing reasons, this Court finds no error in the judgment of the circuit court.

Affirmed.

Petty, J., concurring.

I agree with the majority's analysis and disposition. I write separately, however, because I believe that appellant's incomplete appendix, which did not include the final orders entered by the trial court, precludes us from addressing the merits of this case.

It is an axiom of appellate law that "the judgment of the lower court is presumed to be correct, and the burden is on the appellant to present to us a sufficient [appendix] from which we can determine whether the lower court has erred in the respect complained of." Patterson v. City of Richmond, 39 Va. App. 706, 717 (2003) (quoting Smith v. Commonwealth, 16 Va. App. 630, 635 (1993)). The appendix must include any "incidents of the case germane to the questions presented." Id. (quoting Rule 5A:25(c)(3)). Indeed, its purpose is to assist this Court in determining the merit of the claims.

> The appendix is a tool vital to the function of the appellate process in Virginia. Without it, the [three judges on this panel] would have to pass the original record from one to the other. Much of the contents, though material at trial, may be utterly irrelevant to the issues posed on appeal. By requiring the publication and distribution of an appendix which excludes all irrelevancies, the Rules of Court expedite the adjudication of the appeal and reduce the costs. By requiring the inclusion of all parts of the record germane to the issues, the Rules promote the cause of plenary justice.

Thrasher v. Burlage, 219 Va. 1007, 1009-10 (1979). "Thus, the filing of an appendix that complies with the Rules, is 'essential to an informed collegiate decision.'" Patterson, 39 Va. App. at 717 (quoting Thrasher, 219 Va. at 1010). "At the risk of stating the obvious, the Rules of the Supreme Court are rules and not suggestions; we expect litigants before this Court to abide by them." Bartley v. Commonwealth, 67 Va. App. 740, 746 (2017) (quoting Eaton v. Wash. Cty. Dep't of Soc. Servs., 66 Va. App. 317, 332 n.1 (2016)).

It is hard to imagine a part of the record more germane to an appeal than the final orders that are being appealed. See Thrasher, 219 Va. at 1009. Yet the appellant failed to include the

final orders in the joint appendix.  Such an omission is even more egregious when, as here, the record is paper and not digital.  Accordingly, having concluded that appellant failed "to present to us a sufficient [appendix] from which we can determine whether the lower court has erred in the respect complained of," Patterson, 39 Va. App. at 717, I would have declined to address the merits of appellant's arguments and affirmed the judgment of the trial court.