COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Beales and Huff
Argued by videoconference

UNPUBLISHED

GLENN STUART SMITH

v.      Record No. 0756-20-1

ERICA LYNN SMITH

MEMORANDUM OPINION[*] BY
JUDGE RANDOLPH A. BEALES
FEBRUARY 16, 2021

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Marjorie T. Arrington, Judge

Samuel R. Brown II, for appellant.

Graham K. Bryant (Byrne Legal Group, on brief), for appellee.


Glenn Stuart Smith ("husband") appeals from a judgment of the Circuit Court of the City of

Chesapeake granting Erica Lynn Smith ("wife") a divorce and resolving matters related to the

dissolution of the marriage. Appellant husband argues on appeal that the trial court "erred in

barring Husband from filing his late Answer and Counterclaim" in response to wife's complaint for

divorce and "erred in barring Husband from introducing evidence in support of his counterclaim."

He further argues that the trial court abused its discretion in its equitable distribution of the marital

estate and in ordering husband to pay $10,000 of wife's attorney's fees.

I. BACKGROUND

On appeal, we view the evidence in the light most favorable to wife, as we must because

she was the prevailing party in the trial court, and we grant to wife "'all reasonable inferences

fairly deducible' from the evidence." Mayer v. Corso-Mayer, 62 Va. App. 713, 717 (2014)

(quoting Anderson v. Anderson, 29 Va. App. 673, 678 (1999)). The parties in this matter were

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

married on December 5, 2006, in Virginia Beach. They have three children. One of the children is wife's biological daughter and was adopted by husband after the parties were married. She reached the age of majority prior to the trial court's final decree of divorce and was therefore not subject to the terms of the divorce decree. However, the other two children are currently still minors.

In October of 2016, husband sexually assaulted the oldest of the three children (hereinafter referred to as "daughter"),[1] who was fifteen years old at the time. Daughter told her mother about the incident on October 31, 2016, leading wife to confront husband. Although husband initially denied that he committed the offense, he moved out of the marital home on the same day. Husband ultimately pled guilty to four charges of sexual battery related to his sexual abuse of daughter. The parties have lived separate and apart since husband moved out of the marital home on October 31, 2016.

Wife filed a complaint for divorce on December 14, 2016, seeking a divorce based on cruelty due to husband's sexual abuse of daughter. Husband subsequently filed a motion in the trial court seeking leave to file a late response to wife's complaint. The trial court granted husband's motion in a brief order that stated:

> THIS CAUSE came on to be heard this day upon motion of the Defendant for leave to file late responsive pleadings;
> UPON CONSIDERATION WHEREOF and good cause appearing therefore, it is
> ADJUDGED, ORDERED AND DECREED that Defendant is permitted to file late responsive pleadings.

---

[1] In order to resolve husband's assignments of error and to fully address the arguments of both parties, this appeal requires us to discuss sensitive information contained within the record. While the evidence and information relied upon in this opinion were *not* included in the sealed portion of the trial court record in this case, we nevertheless refer, in general in this opinion, to the victim as "daughter," rather than using her name or initials, in an attempt to better protect her privacy.

This order was signed by the trial judge and entered by the court on March 1, 2017 (the "continuance order").

Husband was then incarcerated for the sexual battery convictions from April 2017 to January 2018. During the time husband was incarcerated, wife served as the sole caretaker of the three children while working full-time as a realtor to provide the family's sole source of income. The divorce proceedings between husband and wife remained dormant during this time, with neither party filing any motions or further pleadings in the trial court. On February 13, 2019 – more than two years after wife filed her complaint and more than a full year after husband was released from jail – husband attempted to file an answer and counterclaim in response to wife's complaint. Wife objected to the answer and counterclaim and asked the trial court to bar husband's responsive pleadings. The trial court found in favor of wife, entering an order which stated:

> CAME THE PARTIES, by counsel, on the 5th day of June, 2019, upon Motion of Plaintiff for an Objection to Filing of Late Answer and Counterclaim; upon evidence heard and argument of counsel, it is hereby ADJUDGED, ORDERED, and DECREED as follows:
>
> 1. The Plaintiff's Objection is hereby sustained and Defendant is barred from late filings.

The trial court entered this order on July 19, 2019. Husband filed a motion for reconsideration asking the court, in part, to reconsider its July 19, 2019 order barring husband's answer and counterclaim. The trial court denied husband's motion.

The case then proceeded to be heard on wife's complaint without husband's answer and counterclaim. Consequently, the trial court declined to allow husband to present evidence in support of his counterclaim. The trial court did, however, permit husband to defend himself against wife's allegation of cruelty as a ground for divorce and to present evidence on equitable distribution.

In the proceedings before the trial court, wife testified that the parties purchased their first home, located in Virginia Beach, in 2005, which they still owned as a rental property (the "rental home") at the time of the divorce. Husband's parents contributed $10,000 to the down payment on this home. Wife testified, "His parents gifted us the down payment," and she said that she was unaware that husband's parents expected to be reimbursed for this $10,000 contribution. Husband testified to the contrary and explained, "They originally loaned us $10,000 to purchase the house," and he said that "the agreement was when we sold the home, we owed them the [$]10,000 back." Husband's mother likewise testified, "It was a loan. We asked them if they ever sold the house to repay us." Husband and wife both testified that the parties later purchased a home in Chesapeake (the "marital home"), which became their primary residence in 2015, and began leasing the rental home in Virginia Beach to tenants on a yearly basis.

The trial court also heard testimony regarding a substantial tax deficiency due to unpaid income taxes on wife's earnings as a realtor in 2015, which gave rise to a $73,000 debt to the Internal Revenue Service (IRS). Wife testified that she had satisfied around $50,000 of the $73,000 tax debt since the parties' separation. Although the tax liability was a marital debt, wife agreed to assume the unpaid balance of the debt as her own separate debt.

On June 16, 2020, the trial court entered its final decree of divorce. The court granted wife's request for a divorce based on cruelty, finding that husband's sexual abuse of daughter clearly amounted to marital cruelty. In its letter opinion, the trial court explained that "[t]he trauma associated with child sexual abuse undoubtedly causes extreme mental anguish to a parent, and remaining in such a marriage would cause any spouse reasonable apprehension of severe injury to her mental health." On the issue of equitable distribution, the two main assets to be distributed were the rental home and the marital home. The court assigned a value of $245,000 to the rental home and found that it was encumbered with a mortgage of $195,000,

leaving $50,000 in equity to be divided. The court awarded wife 90% of the equity in the rental home and awarded husband the remaining 10% of the equity, amounting to $5,000. The court further found that the marital home was worth $435,000 and encumbered by a $291,000 mortgage, leaving $144,000 in equity to be divided. The court awarded wife 95% of the equity in the marital home and awarded husband the remaining 5% of the equity, equal to $7,200.

The trial court explained its equitable distribution rulings in its letter opinion, which set forth the court's findings of fact on each of the statutory equitable distribution factors under Code § 20-107.3(E). The court found that wife was the primary caretaker as well as the primary source of income for the family and that wife's monetary and nonmonetary contributions to the family were "consistently positive." According to the trial court, husband provided "supplemental income" from his work in the construction business and "played a secondary role" in the upbringing of the children. However, the trial court also found that husband's "abuse of his daughter made an extraordinarily negative nonmonetary contribution to the family." In addition, the court found that husband's cruelty toward wife, stemming from his abuse of daughter, caused the dissolution of the marriage.

As for the parties' debts, the trial court found that the $73,000 tax liability (which wife had agreed to assume and toward which she had paid more than $50,000 since the parties' separation) and the $10,000 contribution from husband's parents comprised the only two marital debts in evidence. In so finding, the court accepted the testimony from husband and his mother that the $10,000 contribution to the down payment on the rental home was a loan rather than a gift, and therefore treated the $10,000 contribution as a marital debt. The court concluded that, "in light of Wife's assumption of the tax debt," husband would be solely responsible for the $10,000 debt to his parents.

Finally, the trial court ordered husband to pay $10,000 of wife's attorney's fees. The court found that wife had incurred more than $40,000 in attorney's fees in the divorce proceedings and that husband had "an extremely high degree of fault in bringing about the dissolution of the marriage." Therefore, the trial court determined that husband should be responsible for a portion of wife's attorney's fees. However, because of husband's "limited ability to pay," the court ordered husband to reimburse only $10,000 of the $40,000-plus in attorney's fees that wife had actually incurred. Husband timely filed an appeal with this Court.

## II. ANALYSIS

### A. Husband's Answer and Counterclaim

In husband's first two assignments of error, he contends that the trial court "erred in barring Husband from filing his late Answer and Counterclaim" and "erred in barring Husband from introducing evidence in support of his counterclaim."

"[O]n appeal the judgment of the lower court is presumed to be correct and the burden is on the appellant to present to us a sufficient record from which we can determine whether the lower court has erred in the respect complained of." Smith v. Commonwealth, 16 Va. App. 630, 635 (1993) (quoting Justis v. Young, 202 Va. 631, 632 (1961)). "We cannot review the ruling of a lower court for error when the appellant does not bring within the record on appeal the basis for that ruling or provide us with a record that adequately demonstrates that the court erred." Prince Seating Corp. v. Rabideau, 275 Va. 468, 470 (2008). Therefore, when the appellant fails to provide "parts of the record that are essential to the resolution of the issue before us, we will not decide the issue." Patterson v. City of Richmond, 39 Va. App. 706, 717 (2003).

Rule 5A:25 provides that an appendix "shall be filed by the appellant in all cases," and its contents "shall include . . . any testimony and other incidents of the case germane to the assignments of error." In addition, Rule 5A:8 specifically provides that if the appellant "fails to

ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error affected by such omission shall not be considered." Rule 5A:8(b)(4)(ii).

In this case, the issue that husband raises in his first two assignments of error is whether the continuance order permitted husband to file responsive pleadings more than two years after wife filed her complaint and more than a full year after husband was released from jail. However, husband has failed to present to this Court the actual motion he filed in the trial court requesting the continuance – and has failed to account for the absence of that motion in the record before us. The trial court's continuance order explicitly states that the issue "came on to be heard . . . upon motion of the Defendant" and that "upon consideration whereof and good cause appearing therefore," the trial court would exercise its discretion to grant husband leave to file a late response. Husband's motion, which presented the "good cause" upon which the trial court granted the continuance, is critical to our understanding of the precise relief that he requested and that the continuance order purported to grant.

Furthermore, when the trial court entered its July 19, 2019 order barring husband's responsive pleadings, that order specifically stated that the matter was considered "upon evidence heard and argument of counsel" at a hearing on June 5, 2019. During that hearing, the trial court heard evidence and argument from the parties on the exact issue presented by husband's first two assignments of error – *i.e.*, whether the continuance order permitted husband to file responsive pleadings more than two years after wife filed her complaint and more than a full year after husband was released from jail. Crucially, however, husband has also failed to include a transcript or a statement of facts in lieu of a transcript from the June 5, 2019 hearing. "Without that transcript, we do not know what evidence and argument . . . were presented to the circuit court." McDonald v. Nat'l Enters., Inc., 262 Va. 184, 195 (2001). We also do not know

- 7 -

the reasons the trial judge may have given in response to the evidence and arguments of counsel to explain the decision of the trial court. Therefore, without a transcript or statement of facts in lieu of a transcript from the June 5, 2019 hearing, "we cannot determine the basis for the circuit court's ruling." Prince Seating, 275 Va. at 471.

Because of the failure to include husband's motion requesting the continuance order, this Court does not have "all parts of the record germane to the issues" presented by this appeal. Patterson, 39 Va. App. at 717 (quoting Thrasher v. Burlage, 219 Va. 1007, 1009-10 (1979) (*per curiam*)); see also Rule 5A:25. Moreover, by omitting a transcript or a statement of facts in lieu of a transcript from the June 5, 2019 hearing, husband has "fail[ed] to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues," and, therefore, his assignments of error that are "affected by such omission shall not be considered." Rule 5A:8(b)(4)(ii). In short, because husband "failed to present a complete record to this Court for proper review of the issue he raises, we cannot address the merits of that issue . . . ." Lowery v. Commonwealth, 9 Va. App. 304, 308-09 (1990). Consequently, we do not disturb the judgment of the trial court on husband's first two assignments of error. See Browning v. Browning, 68 Va. App. 19, 30 (2017) (holding that a Rule 5A:8 error requires affirmance rather than dismissal because it is non-jurisdictional); Patterson, 39 Va. App. at 717-18 (affirming the judgment of the trial court, rather than dismissing the appeal, where the appendix was "insufficient to decide the present issue").[2]

---

[2] In reaching this conclusion, we are mindful that "[a] court speaks only through its orders," Cunningham v. Smith, 205 Va. 205, 208 (1964), and that a reviewing court's "interpretation of these orders is limited to their own language," Richardson v. Commonwealth, 67 Va. App. 436, 446 (2017). It is axiomatic, however, that "[c]ourts can only grant relief requested," Irwin v. Irwin, 47 Va. App. 287, 298 n.10 (2005), and that "a court may not award particular relief unless it is substantially in accord with the case asserted in th[e] pleadings[,]" Dabney v. Augusta Mut. Ins. Co., 282 Va. 78, 86 (2011) (quoting Jenkins v. Bay House Assocs., L.P., 266 Va. 39, 43 (2003)); see also Ted Lansing Supply Co. v. Royal Aluminum & Const. Corp., 221 Va. 1139, 1141 (1981) ("Pleadings are as essential as proof, and no relief should be

B. Equitable Distribution

Next, husband challenges the trial court's equitable distribution award. He argues that the trial court "erred in awarding Husband 10% equity in the parties' rental property," "erred in awarding Husband 5% equity in the marital residential property," and "erred in concluding that Husband is solely responsible for the $10,000 marital debt to Husband's parents."

1. Distribution of Marital Assets

"In reviewing an equitable distribution award on appeal, we have recognized that the trial court's job is a difficult one, and we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case." Wright v. Wright, 61 Va. App. 432, 449-50 (2013) (quoting Klein v. Klein, 11 Va. App. 155, 161 (1990)). "Accordingly, 'decisions concerning equitable distribution rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence.'" Id. at 450 (quoting McDavid v. McDavid, 19 Va. App. 406, 407-08 (1994)).

Husband contends that the trial court abused its discretion by making an inequitable division of the marital assets – by awarding a 90/10 split of the equity in the rental home in wife's favor and by awarding a 95/5 split of the equity in the marital home also in wife's favor. Husband argues that, although the trial court analyzed the statutory factors under Code § 20-107.3(E), the equitable distribution award "should be set aside because the trial court failed to properly evaluate each of the equitable distribution factors in light of the evidence presented

---

granted that does not substantially accord with the case as made in the pleading." (quoting Bank of Giles Cnty. v. Mason, 199 Va. 176, 180 (1957))). In this particular case, husband's failure to supply an adequate record is fatal to our ability to discern the precise relief that the terms of the continuance order purported to grant. Therefore, we cannot evaluate whether the trial court erred in barring husband's responsive pleadings without reviewing husband's motion and the particular relief that husband requested therein.

by the parties." Husband asserts that the trial court ignored evidence relevant to some of the statutory factors, such as husband's positive contributions to the marital estate. He contends that "the only reasonable explanation" for the large difference in the award between the parties "is that the trial court considered, or placed an undue weight upon, Husband's criminal conviction for misdemeanor sexual assault" and then "improperly determined to penalize Husband" for that crime.

The trial court's letter opinion in this case comprehensively details the court's findings of fact on each of the statutory factors under Code § 20-107.3(E) that supported the court's distribution of the marital assets. The trial court found that wife was "both the primary caretaker of the parties' three children and the primary income earner," and, therefore, that wife's monetary and nonmonetary contributions to the family were "consistently positive." Husband, by contrast, the trial court found, provided "supplemental income" from his work in the construction business and "played a secondary role" in the upbringing of the children. Thus, the court did acknowledge husband's positive contributions to the marriage and to the family, but saw husband's contributions as far less substantial than wife's consistently positive contributions. In addition, the court further found that husband's "abuse of his daughter made an extraordinarily negative nonmonetary contribution to the family" and that husband's cruelty stemming from his sexual abuse of daughter caused the dissolution of the marriage.

Contrary to husband's argument that the trial court committed reversible error by an "unreasonable 10% division in the marital rental property" and by also "erroneously divid[ing] the equity in the marital residential home dramatically in favor of Wife," it is well settled that "[e]quitable distribution does not mean equal distribution." Budnick v. Budnick, 42 Va. App. 823, 838 (2004). This Court "will not disturb the trial court's equitable distribution award merely because it is unequal in value between the parties, where the record reflects that the trial

court has considered each of the factors set out in Code § 20-107.3(E), and where the evidence supports the trial court's conclusions." Id. "It is within the discretion of the court to make an equal division *or to make a substantially disparate division* of assets as the factors outlined in Code § 20-107.3(E) require." Rinaldi v. Rinaldi, 53 Va. App. 61, 76 (2008) (emphasis added) (quoting Matthews v. Matthews, 26 Va. App. 638, 645 (1998)).

Husband also argues that the trial court abused its discretion by relying on his sexual abuse of his daughter without connecting that abuse to a pecuniary effect on the marital estate. However, "[t]his Court has held that '[c]onsideration of nonmonetary contributions to the well being of the family under Code § 20-107.3(E)(1) requires no showing of an adverse economic impact. In that context, the 'well-being' of the family relates to the effect on the family's emotional welfare and condition.'" Budnick, 42 Va. App. at 836 (second alteration in original) (quoting Watts v. Watts, 40 Va. App. 685, 699 (2003)). In other words, "Code § 20-107.3(E) does not require that the trial court find that the negative nonmonetary contribution resulted in a pecuniary impact on marital property when it considers how that spouse's conduct affected the well-being of the family for equitable distribution purposes." Id. at 836-37. In this case, the record clearly supports the trial court's finding that husband's "extraordinarily negative nonmonetary contribution" was devastating to the overall well-being of the family, and the court did not need to connect that "negative nonmonetary contribution" to an adverse pecuniary effect on the marital estate in order to consider it pursuant to Code § 20-107.3(E)(1).

Finally, husband argues that the trial court improperly relied on fault to affect the equitable distribution award and then used that equitable distribution award "to punish Husband." We have previously explained that "while equitable distribution is not a vehicle to punish behavior, the statutory guidelines authorize consideration of such behavior as having an adverse effect on the marriage and justifying an award that favors one spouse over the other."

- 11 -

O'Loughlin v. O'Loughlin, 20 Va. App. 522, 527 (1995) (citing Smith v. Smith, 18 Va. App. 427, 431-32 (1994)). The trial court in this case properly considered "[t]he circumstances and factors which contributed to the dissolution of the marriage," which Code § 20-107.3(E)(5) explicitly authorized the court to consider. The court did not use equitable distribution actually "to punish Husband" for his sexual abuse of daughter. Rather, it found that husband's sexual abuse of his daughter destroyed the marriage and caused its dissolution. The court was permitted to consider this factor in fashioning an equitable distribution award that weighed heavily in favor of wife. Accordingly, for all of these reasons, we cannot say that the trial court abused its discretion by entering an equitable distribution award that substantially favored wife, and we therefore affirm the trial court's distribution of the parties' marital assets.

2. Distribution of Marital Debts

Husband next argues that the trial court "erred in concluding that Husband is solely responsible for the $10,000 marital debt to Husband's parents." He submits that "[t]his order should be reversed and remanded back to the trial court with an order to apply the facts and treat the loan as a marital debt" because "[t]he evidence plainly supports that this debt be divided evenly between the parties."[3]

Code § 20-107.3(E) provides that "[t]he amount of any division or transfer of jointly owned marital property, and the amount of any monetary award, *the apportionment of marital debts*, and the method of payment shall be determined by the court after consideration of the following [11] factors." (Emphasis added). Thus, Code § 20-107.3(E) expressly grants courts the discretion to determine how to apportion debts between the parties *after* those debts have

_____

[3] In his brief to this Court, husband maintains that the trial court should have treated the $10,000 contribution as a loan rather than a gift. However, he also acknowledges on brief that the trial court did, in fact, find that the $10,000 contribution is a marital debt. Because the trial court *did* conclude that the $10,000 contribution from husband's parents was a loan and that it therefore constitutes a marital debt, we do not need to address that aspect of the trial court's decision.

been classified as marital. In this case, although wife claimed that she was unaware that husband's parents expected husband and wife to reimburse the $10,000 contribution when the rental home was sold, the trial court treated the contribution from husband's parents as a loan that created a marital debt. The court was not required to apportion this debt equally between the parties simply because the court classified the debt as marital. After considering each of the statutory factors, the trial court decided that this debt should be allocated solely to husband. Most significantly, in reaching this decision, the trial court noted that wife had agreed to assume the unpaid balance of the $73,000 tax debt to the IRS as her own, even though that debt was also a marital debt. Therefore, the trial court concluded, "Husband shall be solely responsible for the debt to his parents, in light of Wife's assumption of the tax debt." The trial court acted well within its discretion in doing so. Accordingly, we affirm the trial court's judgment allocating this $10,000 debt solely to husband.

## C. Attorney's Fees

In his final assignment of error, husband argues that the trial court "erred in awarding attorney's fees to Wife in the amount of $10,000." He argues that the court abused its discretion in ordering him to pay attorney's fees because wife has a greater ability to pay and because the equitable distribution award substantially favored wife.

"[A]n award of attorney's fees and costs is a matter for the trial court's sound discretion after considering the circumstances and equities of the entire case." Jones v. Gates, 68 Va. App. 100, 105 (2017) (quoting Mayer, 62 Va. App. at 731). "Such decision 'is reviewable on appeal only for an abuse of discretion.'" Id. (quoting Graves v. Graves, 4 Va. App. 326, 333 (1987)). In this case, the trial court found that wife incurred more than $40,000 in attorney's fees. The trial court concluded that husband had "an extremely high degree of fault in bringing about the dissolution of the marriage," but in light of husband's "limited ability to pay," the court ordered husband to reimburse only $10,000 of wife's attorney's fees. Thus, the court specifically

- 13 -

accounted for husband's "limited ability to pay" in fashioning its award of attorney's fees. We therefore cannot say that the trial court abused its discretion in deciding to hold husband responsible for a portion of wife's attorney's fees, and, consequently, we affirm the trial court's partial award of attorney's fees to wife.

Finally, both parties ask this Court to award them appellate attorney's fees. This Court has discretion to grant or deny a request for attorney's fees incurred on appeal. See Rule 5A:30(b); see also O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695 (1996). In making such a determination, the Court considers "all the equities of the case." Rule 5A:30(b)(3). In this case, the arguments presented on husband's assignments of error are not frivolous. For example, husband's appeal of the trial court's distribution of the marital equity in the marital home and in the rental home was hardly frivolous even though we affirm the trial court's decision. After considering the record before us and all the equities of the case, we deny both parties' requests for appellate attorney's fees.

III. CONCLUSION

In short, we cannot reach the merits of husband's first and second assignments of error because husband has failed to meet his burden of providing an adequate record from which we can determine whether the trial court erred. The record in this case does not include the very motion husband filed in the trial court seeking leave to file late responsive pleadings, which was granted by the trial court's continuance order. His omission of this motion (and any reasons it provided in its text) deprives us of the ability to discern the particular relief that he requested from the trial court and, consequently, the boundaries of the relief that the trial court was authorized to grant by the continuance order. Courts cannot grant more than a party actually requests. See Irwin v. Irwin, 47 Va. App. 287, 298 n.10 (2005). Furthermore, husband failed to include in the record on appeal a transcript or statement of facts in lieu of a transcript from the June 5, 2019 hearing, during which the

- 14 -

parties presented evidence and argument on the precise issue presented by husband's first two assignments of error – *i.e.*, whether the continuance order permitted husband to file an answer and counterclaim more than two years after wife filed her complaint and more than a full year after husband was released from jail. Given husband's omission of his motion requesting the continuance so that we can see what it actually requested (and the reasoning why) and given the omission of a transcript or statement of facts in lieu of a transcript from the June 5, 2019 hearing, we are unable to determine whether the trial court erred in the respect alleged in husband's first two assignments of error. Consequently, we cannot reach those assignments of error, and we therefore do not disturb the decisions underlying them by the trial court.

Next, in exercising its discretion to fashion an equitable distribution award under the unique circumstances of this case, the trial court did not err in allocating 90% of the marital equity in the rental home to wife and the remaining 10% to husband, or in allocating 95% of the marital equity in the marital home to wife and the remaining 5% to husband. The trial court's equitable distribution award was entered after the trial court's thorough consideration of each of the statutory equitable distribution factors under Code § 20-107.3(E), and the trial court's findings on the statutory factors were supported by credible evidence in the record. There is ample evidence in the record to substantiate the trial court's findings of fact that wife was both the primary income earner and the primary caretaker of the parties' three children. Furthermore, the record supports the trial court's findings of fact that husband's sexual abuse of his daughter made an "extraordinarily negative nonmonetary contribution" to the well-being of the family and that these cruel actions by husband caused the dissolution of the marriage. Accordingly, we cannot say that the trial court abused its discretion by entering an equitable distribution award that substantially favored wife, and we affirm the trial court's distribution of the parties' marital assets.

We also find no error in the trial court's decision to allocate solely to husband the $10,000 marital debt arising from his parents' contribution to the down payment on the rental home, which was the parties' first marital home. Although the trial court accepted husband's position that this $10,000 contribution was a loan rather than a gift and that it therefore constituted a marital debt, the court's classification of this debt as marital did not require the trial court to apportion the debt evenly between the parties. The court concluded that, "in light of Wife's assumption of the tax debt," which was also a marital debt (and a considerably larger one), husband should be solely responsible for the $10,000 debt to his parents. We cannot say that this decision amounted to an abuse of discretion, and, therefore, we affirm the trial court's allocation of the $10,000 marital debt to husband.

Furthermore, the trial court also did not abuse its discretion in ordering husband to pay $10,000 of wife's attorney's fees. The trial court found that husband had an extremely high degree of fault in bringing about the dissolution of the marriage. Furthermore, in consideration of husband's limited ability to pay, the trial court determined that husband would be responsible for only $10,000 of the more than $40,000 in attorney's fees that wife had actually incurred. The trial court acted well within its discretion in doing so. Finally, as noted *supra*, we decline to grant either party's request for appellate attorney's fees.

For all of these reasons, we affirm the judgment of the trial court.

<u>Affirmed.</u>